**No. 25-1126**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

JACQUELINE STEVENS,

Plaintiff-Appellee,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

Defendant-Appellant.

On Appeal from the United States District Court for the Northern District of Illinois, No. 1:22-cv-5072 (Matthew F. Kennelly, J.)

# BRIEF FOR APPELLANT


YAAKOV M. ROTH
*Acting Assistant Attorney General*

MORRIS PASQUAL
*Acting United States Attorney*

DANIEL TENNY
SIMON C. BREWER
*Attorneys, Appellate Staff*
*Civil Division, Room 7529*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 616-5367*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ... iii

INTRODUCTION ... 1

STATEMENT OF JURISDICTION ... 2

STATEMENT OF THE ISSUE ... 2

PERTINENT STATUTES ... 3

STATEMENT OF THE CASE ... 3

A. Statutory Background ... 3

B. Prior Proceedings ... 5

SUMMARY OF ARGUMENT ... 8

STANDARD OF REVIEW ... 10

ARGUMENT ... 11

The District Court Had No Basis to Order the Blanket Disclosure of 2000 Pages of Material as to Which the Government Claimed Exemptions. ... 11

A. The agency acted in good faith. ... 13

B. Any errors in the agency's summary-judgment materials do not justify the district court's disclosure order. ... 18

CONCLUSION ... 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

CIRCUIT RULE 30(d) STATEMENT

ADDENDUM

SHORT APPENDIX

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Appleton Papers, Inc. v. EPA*,
702 F.3d 1018 (7th Cir. 2012) ........................................................ 19

*August v. FBI*,
328 F.3d 697 (D.C. Cir. 2003) ........................................................ 14

*CIA v. Sims*,
471 U.S. 159 (1985) ........................................................................ 3

*EPA v. Mink*,
410 U.S. 73 (1973) .......................................................................... 26

*FBI v. Abramson*,
456 U.S. 615 (1982) ........................................................................ 3

*Fischer v. U.S. Dep't of Justice*,
723 F. Supp. 2d 104 (D.D.C. 2010) ............................................ 13-14

*Henson v. Department of Health & Human Servs.*,
892 F.3d 868 (7th Cir. 2018) .......................................................... 21

*Jimenez v. Department of Homeland Sec.*,
119 F.4th 892 (11th Cir. 2024) ...................................................... 14

*John Doe Agency v. John Doe Corp.*,
493 U.S. 146 (1989) ........................................................................ 3

*Judicial Watch, Inc. v. Food & Drug Admin.*,
449 F.3d 141 (D.C. Cir. 2006) ........................................................ 24

*King v. U.S. Dep't of Justice*,
830 F.2d 210 (D.C. Cir. 1987) ........................................................ 24

*Kissinger v. Reporters Comm. for Freedom of the Press*,
445 U.S. 136 (1980) ........................................................................ 11

*Kowal v. U.S. Dep't of Justice*,
107 F.4th 1018 (D.C. Cir. 2024) ................................................ 11, 23

*Lakin Law Firm, P.C. v. FTC*,
352 F.3d 1122 (7th Cir. 2003) .................................................... 22

*Maynard v. CIA*,
986 F.2d 547 (1st Cir. 1993) .................................................... 13

*Meeropol v. Meese*,
790 F.2d 942 (D.C. Cir. 1986) .................................................. 14, 26

*Miller v. Bell*,
661 F.2d 623 (7th Cir. 1981), *abrogated on other grounds by*
*U.S. Dep't of Justice v. Landano*, 508 U.S. 165 (1993) ........................ 2

*Minier v. CIA*,
88 F.3d 796 (9th Cir. 1996) .................................................... 18

*Moffat v. U.S. Dep't of Justice*,
716 F.3d 244 (1st Cir. 2013) .................................................... 16

*National Archives & Records Admin. v. Favish*,
541 U.S. 157 (2004) .................................................... 22

*Oglesby v. U.S. Dep't of the Army*,
79 F.3d 1172 (D.C. Cir. 1996) .................................................... 17

*Quiñon v. FBI*,
86 F.3d 1222 (D.C. Cir. 1996) .................................................... 25

*Rein v. U.S. Patent & Trademark Office*,
553 F.3d 353 (4th Cir. 2009) .................................................... 23

*Rugiero v. U.S. Dep't of Justice*,
257 F.3d 534 (6th Cir. 2001) .................................................. 16-17

*Sandra T.E. v. South Berwyn Sch. Dist. 100*,
600 F.3d 612 (7th Cir. 2010) .................................................... 19

*Sherman v. U.S. Dep't of the Army*,
244 F.3d 357 (5th Cir. 2001) .................................................. 21, 22

*Silets v. U.S. Dep't of Justice*,
945 F.2d 227 (7th Cir. 1991) .................................................... 13

*Solar Sources, Inc. v. United States*,
142 F.3d 1033 (7th Cir. 1998) .......... 5, 26

*Stevens v. U.S. Dep't of State*,
20 F.4th 337 (7th Cir. 2021) .......... 12, 13

*Transgender Law Ctr. v. ICE*,
46 F.4th 771 (9th Cir. 2022) .......... 23-24

*U.S. Dep't of Def. v. Federal Labor Relations Auth.*,
510 U.S. 487 (1994) .......... 15

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989) .......... 15

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
592 U.S. 261 (2021) .......... 4, 19

*Vaughn v. Rosen*,
484 F.2d 820 (D.C. Cir. 1973) .......... 5

*Vidal-Martinez v. U.S. Dep't of Homeland Sec.*,
84 F.4th 743 (7th Cir. 2023) .......... 10-11, 11, 20

**Statutes:**

Freedom of Information:
5 U.S.C. § 552(a)(3)(A) .......... 3
5 U.S.C. § 552(a)(4)(B) .......... 2, 4, 5
5 U.S.C. § 552(b) .......... 3
5 U.S.C. § 552(b)(5) .......... 3
5 U.S.C. § 552(b)(6) .......... 4
5 U.S.C. § 552(b)(7)(C) .......... 4
5 U.S.C. § 552(b)(7)(E) .......... 4
5 U.S.C. § 552a(b) .......... 5, 22

28 U.S.C. § 1292(a) .......... 2

28 U.S.C. § 1331 .......... 2

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ........................................................................ 2

Fed. R. Civ. P. 26(b)(3)(A) .................................................................... 19

## INTRODUCTION

In this Freedom of Information Act (FOIA) case, the district court required U.S. Immigration and Customs Enforcement (ICE) to produce approximately 2000 pages of completely unredacted records. These records include privileged attorney communications; highly private personal information, such as social security numbers; and information that could be used to access law-enforcement databases without authorization.

The district court did not suggest, nor could it plausibly have suggested, that these documents were subject to mandatory disclosure under the FOIA. Nor did the court assert that the government had failed to invoke the applicable FOIA exemptions. Instead, the court concluded that because of perceived deficiencies in the government's submissions that were immaterial to the vast majority of the redactions, every redaction must be lifted.

The district court's reasoning fails on every level. The court confused good-faith mistakes in connection with a voluminous set of documents—mistakes that the government endeavored to correct—with bad faith. And in any event, the blanket disclosure order was grossly

disproportionate to the concerns that the district court raised. This Court should reverse and remand for the district court to evaluate the agency's invocation of FOIA exemptions, many of whose validity is self-evident, on the merits.

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 5 U.S.C. § 552(a)(4)(B) (Freedom of Information Act). On January 16, 2025, the district court entered an order requiring ICE to disclose withheld records. The government filed a timely notice of appeal on January 24, 2025. *See* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a). *See Miller v. Bell*, 661 F.2d 623, 625 (7th Cir. 1981) (per curiam) ("A disclosure order in a FOIA suit is injunctive in nature."), *abrogated on other grounds by U.S. Dep't of Justice v. Landano*, 508 U.S. 165 (1993).

## STATEMENT OF THE ISSUE

Whether the district court properly ordered the disclosure, without redactions, of approximately 2000 pages of documents containing

privileged material, sensitive personal information, and law-enforcement records.

## PERTINENT STATUTES

Pertinent statutory provisions are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A. Statutory Background

The FOIA generally mandates disclosure of federal agency records upon request, but the statute's disclosure requirement "does not apply" to documents that fall within one of its enumerated exemptions. 5 U.S.C. § 552(a)(3)(A), (b). These statutory exemptions reflect Congress's judgment that "public disclosure is not always in the public interest," *CIA v. Sims*, 471 U.S. 159, 166-67 (1985), because "legitimate governmental and private interests" may be damaged by releasing certain types of information, *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting *FBI v. Abramson*, 456 U.S. 615, 621 (1982)). Several of the exemptions are relevant here:

**Exemption 5** generally protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

That includes documents subject to "the deliberative process privilege, attorney-client privilege, and attorney work-product privilege." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021).

**Exemptions 6 and 7(C)** protect personal privacy interests. Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," while Exemption 7(C) covers "records or information compiled for law enforcement purposes" if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6), (7)(C).

**Exemption 7(E)** protects law-enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

A FOIA requester may file suit seeking to compel an agency to produce withheld records. 5 U.S.C. § 552(a)(4)(B). To determine whether the agency properly withheld the records pursuant to the FOIA's exemptions, the district court typically looks to a *Vaughn* index

or declaration submitted by the agency.[1] Alternatively, the district court "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions." *Id.*

### B. Prior Proceedings

**1.** Plaintiff is a professor at Northwestern University. SA 1.[2] In the course of her research, she filed FOIA requests with ICE seeking records relating to three named individuals. SA 1-2.[3] She submitted waivers of the Privacy Act's restrictions on releasing information that pertains to individuals executed by those three people, but she did not submit waivers for any other third parties. SA 2; *see* 5 U.S.C. § 552a(b).

**2.** Alleging that ICE failed to respond to her requests within the period prescribed by statute, plaintiff filed this suit seeking to compel

[1] "A *Vaughn* index is a comprehensive listing of each withheld document cross-referenced with the FOIA exemption that the Government asserts is applicable." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1036 n.3 (7th Cir. 1998); *see also Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

[2] Citations to the short appendix bound with the government's opening brief will be abbreviated "SA __." Citations to the government's appendix will be abbreviated "GA __."

[3] Plaintiff submitted similar requests to other various agencies, but only ICE's responses are at issue in this appeal.

the production of responsive records. *See* Dkt. No. 1. The district court granted plaintiff a preliminary injunction requiring ICE to process 1500 pages of potentially responsive documents per month until the production was completed. *See* Dkt. Nos. 34, 36. ICE ultimately produced nearly 3000 pages of responsive records to plaintiff, but it withheld in whole or in part approximately 2000 of those pages under FOIA Exemptions 5, 6, 7(C), and 7(E). SA 3.

**3.** After ICE completed processing the potentially responsive records, the parties cross-moved for summary judgment. Dkt. Nos. 87, 96. ICE filed a *Vaughn* index and supporting declaration to explain why it withheld material under the invoked FOIA exemptions. *See* GA 1-19 (declaration); GA 21-59 (*Vaughn* index). The *Vaughn* index inadvertently omitted several pages, so the district court granted ICE leave to file supplemental *Vaughn* materials. SA 3; *see* GA 60-68 (supplemental declaration); GA 69-82 (supplemental *Vaughn* index).

As relevant here, the district court granted summary judgment for plaintiff on her claim that ICE improperly withheld responsive records.[4]

---

[4] The court also directed ICE to perform additional searches for responsive records and to submit a new affidavit explaining how it

*Continued on next page.*

The district court perceived several deficiencies in the *Vaughn* index and declarations. For example, the court stated that ICE had redacted some personally identifying information that had already been made public in court documents. SA 21-22. The court also faulted the agency's declarant for mistakenly describing the *Vaughn* index as containing five columns, rather than four. SA 22. The district court concluded, based on these concerns (along with the inadvertent omissions of several pages of the original *Vaughn* index described above), that the agency did not act in good faith and on that basis decided to disregard the agency's *Vaughn* index and declarations in their entirety. SA 22-23.

Having disregarded the documents explaining the agency's reasons for its withholdings, the district court determined that ICE failed to meet its burden to support the exemptions invoked for all 2000 pages that had been withheld in whole or in part. SA 24. The court stated that not only would it disregard the *Vaughn* index and declaration that the government had already filed, it would also decline to seek additional information about the records at issue, such as by conducting an in

---

conducted those searches. SA 25-26. ICE has complied with that portion of the order. Dkt. No. 139.

camera review or ordering the agency to provide supplemental *Vaughn* materials. *Id.* It simply directed ICE to "produce all responsive records to [plaintiff], without redaction," within two weeks. *Id.*

**4.** ICE twice sought a stay from the district court to preserve the opportunity for appellate review. Dkt. Nos. 121, 131. The court denied both motions but extended the deadline for compliance until April 30, 2025. GA 89-90; Dkt. No. 138. To prevent this appeal from becoming moot, ICE intends to seek a further stay prior to the revised deadline for disclosure.

## SUMMARY OF ARGUMENT

In this FOIA litigation, the government provided materials sufficient to demonstrate that withholding of large swaths of material was justified based on the straightforward application of FOIA exemptions. For example, the materials at issue include privileged conversations among government attorneys; third parties' sensitive personal information, including social security numbers; and information that could be used to access law-enforcement databases without authorization. The government identified the applicable FOIA exemptions for these materials and provided a declaration made under

the penalty of perjury to support the exemptions invoked, as is customary in FOIA cases.

The district court could conclude that every document should be produced without redactions only by expressly disregarding, in their entirety, the agency filings that establish the basis for the withholdings. According to the district court, deficiencies in the government's submissions warranted compelling the production of 2000 pages of documents with no redactions whatsoever, without regard to whether the alleged deficiencies had anything to do with the applicability of the claimed exemption. The court's analysis reflects numerous errors and constitutes a clear abuse of discretion.

The district court concluded, in particular, that the materials supporting the invocation of FOIA exemptions were prepared in bad faith. But the concerns that the district court raised reflected good-faith errors that the government sought to correct, or do not reflect errors at all. Because there is no evidence suggesting the agency acted in bad faith, the district court should not have rejected the well-settled presumption of good faith that attaches to ICE's filings.

Moreover, even if the agency's summary-judgment filings were flawed in some particular, that would not justify the district court's order. The court required ICE to disclose each and every document at issue without any redactions. But the court did not analyze the documents in a systematic way or even conclude that they fell outside the FOIA's exemptions. Instead, having refused to consider the materials the government submitted, the court announced that the agency had failed to justify the redactions and that no further submissions would be permitted. Even when there is a deficiency in the justification for a particular redaction, it is well established that courts should gather more information about any inadequately explained withholdings to avoid requiring the release of exempt records. There is no basis whatsoever for ordering the release not only of those records, but also of other records as to which exemptions were properly supported.

## STANDARD OF REVIEW

In appeals arising from FOIA summary-judgment orders, this Court reviews "*de novo* whether the district court had an adequate factual basis for its decisions." *Vidal-Martinez v. U.S. Dep't of Homeland Sec.*,

84 F.4th 743, 747 (7th Cir. 2023) (alteration and quotation marks omitted). If the district court had an adequate factual basis for its decisions, this Court reviews for clear error conclusions regarding a FOIA exemption's applicability to a particular record. *Id.*[5]

## ARGUMENT

### THE DISTRICT COURT HAD NO BASIS TO ORDER THE BLANKET DISCLOSURE OF 2000 PAGES OF MATERIAL AS TO WHICH THE GOVERNMENT CLAIMED EXEMPTIONS.

The FOIA embodies "a carefully balanced scheme of public rights and agency obligations" regarding access to agency records. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). As part of that balance, "[c]ourts are forbidden from prying loose from the government even the smallest bit of information that is properly withheld" under the FOIA's exemptions. *Kowal v. U.S. Dep't of Justice*, 107 F.4th 1018, 1030 (D.C. Cir. 2024) (quotation marks omitted). To determine whether a FOIA exemption applies, district courts often

[5] Some of this Court's decisions question whether a clear-error standard should apply in a summary-judgment appeal. *See, e.g.*, *Vidal-Martinez*, 84 F.4th at 747 n.3 (collecting cases). There is no need to address that issue because the district court's order should be reversed under any standard of review. *See id.*

must conduct a "comprehensive, record-by-record review." *Stevens v. U.S. Dep't of State*, 20 F.4th 337, 342 (7th Cir. 2021).

In this case, the government supplied a 51-page *Vaughn* index and 28 pages of declarations that invoked FOIA Exemptions 5, 6, 7(C), and 7(E) to justify the withholding, in whole or in part, of 2000 pages of records responsive to plaintiff's FOIA requests. *See* GA 1-82. But the district court never analyzed whether the vast majority of ICE's withholdings were adequately justified by the government's submissions. Instead, the court ordered every page of every document to be disclosed, based on a broad-brush conclusion that the government's index and declarations were prepared in bad faith. As discussed in more detail below, that conclusion caused the district court to order the disclosure of communications among government attorneys about litigation strategy; the names, social security numbers, dates of birth, blood types, addresses, and signatures of private individuals; and information that could assist unauthorized parties in obtaining access to law-enforcement databases. That decision reflected numerous errors.

### A. The agency acted in good faith.

Agencies enjoy a "well settled" presumption of good faith in responding to FOIA requests. *Stevens*, 20 F.4th at 342. Without "*evidence* of bad faith," a district court properly relies on the agency's submissions explaining the reasons for its invoking a FOIA exemption. *Silets v. U.S. Dep't of Justice*, 945 F.2d 227, 231 (7th Cir. 1991) (en banc). Here, the district court perceived three errors in the agency's *Vaughn* index and declarations that, in the court's view, rebutted the presumption of good faith. SA 22-23. The record does not remotely support that conclusion.

**1.** The district court criticized the *Vaughn* index for correcting the basis for several redactions that ICE had previously provided. *See* SA 21. That does not demonstrate bad faith. To the contrary, ICE's "forthright disclosure" that some previously claimed exemptions were inapplicable (and its concomitant correction of the basis for redacting those documents) "suggests good faith." *Maynard v. CIA*, 986 F.2d 547, 565 (1st Cir. 1993); *see also, e.g.*, *Fischer v. U.S. Dep't of Justice*, 723 F. Supp. 2d 104, 109 (D.D.C. 2010) (the "agency's cooperative behavior

of notifying the Court and plaintiff that it had discovered a mistake" tends to show "good faith").

Agencies sometimes invoke inapplicable FOIA exemptions for a variety of reasons, including "human error." *August v. FBI*, 328 F.3d 697, 700 (D.C. Cir. 2003). When that happens, "what is expected of a law-abiding agency is that it admit and correct error." *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986). Penalizing an agency for such corrections—as the district court did here—would undermine the statutory scheme by discouraging FOIA officials from "review[ing] records more than once to ensure accurate responses." *Jimenez v. Department of Homeland Sec.*, 119 F.4th 892, 903 (11th Cir. 2024). The benefits of such review are apparent here: some corrections resulted in more information being released to plaintiff. *E.g.*, GA 34 ("Upon further consideration, ICE no longer claims [Exemption 5] as to this information and can release the previously withheld materials."). And the remainder—where ICE corrected the basis for redaction—concerned no more than a tiny fraction of the pages processed by the agency.

**2.** The district court faulted the agency for redacting a private attorney's name and contact information contained in public court

filings. SA 21-22. It described the redaction as "ludicrous" and "preposterous" based on its view that "[i]n no universe does publicly available information ever risk a clearly unwarranted invasion of privacy." SA 21-22, 22 n.5 (emphasis omitted). The position that the disclosure under the FOIA of publicly available information can sometimes constitute a clearly unwarranted invasion of privacy is neither "ludicrous" nor "preposterous"; to the contrary, it is correct under binding Supreme Court precedent. As the Court has explained, some publicly available information may be properly withheld under the FOIA, such as when the disclosure makes information more readily available or likely to be disseminated. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-64, 763 n.15 (1989) (discussing disclosure of "rap sheets" that could be compiled from public court records). That is because "[a]n individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." *U.S. Dep't of Def. v. Federal Labor Relations Auth.*, 510 U.S. 487, 500 (1994).

Given those principles, ICE reasonably redacted details about the private attorney. A private party has a nontrivial privacy interest in their contact information, and here releasing that information would serve no obvious public interest, even if that information is already public in some form. *See U.S. Dep't of Def.*, 510 U.S. at 500-02 (concluding that the disclosure of federal employees' home addresses would constitute a clearly unwarranted invasion of personal privacy even if they might be available to the public in some form such as in a telephone directory). At a minimum, the agency had a good-faith basis for invoking FOIA's privacy exemptions. Indeed, plaintiff did not even argue to the district court that this withholding was improper. *See* Dkt. No. 96, at 9-11.

But even if the agency erred in redacting this information, such an error falls far short of demonstrating bad faith. It is doubtful that "an agency's incorrect invocation of FOIA exemptions can ever serve as evidence of bad faith." *Moffat v. U.S. Dep't of Justice*, 716 F.3d 244, 255 (1st Cir. 2013). "[E]ven if the agency claimed an exemption in error" with respect to one or two records, "that fact alone does not establish that the government's response lacked good faith." *Id.*; *accord Rugiero v.*

*U.S. Dep't of Justice*, 257 F.3d 534, 546 (6th Cir. 2001) ("[O]ne instance of failing to release a record—without more—does not constitute bad faith, especially when as here the agency has processed a voluminous body of responsive documents."); *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1183 (D.C. Cir. 1996) (holding that an employee who "makes a mistake" by "withhold[ing] information that ultimately turns out to be substantially similar to information that has already been released" could still be a "reliable affiant").

**3.** Finally, the district court observed that the agency's supporting declaration "states that the proffered *Vaughn* index has five columns," when the index in fact "contains four columns." SA 22. The court acknowledged that "this may seem like a small point," but it thought the mistake demonstrated "that the *Vaughn* index was not prepared by ICE in good faith." SA 22-23. Again, that conclusion does not follow. Bad faith involves "duplicity or intentional misrepresentation." *Oglesby*, 79 F.3d at 1183. The record lacks any indication that a minor mistake in describing the format of the *Vaughn* index—which had no evident import to the substantive issues presented and was itself provided to

the district court and to plaintiff—involved any attempt to mislead or deceive the court or plaintiff.

### B. Any errors in the agency's summary-judgment materials do not justify the district court's disclosure order.

The district court's assessment that ICE lacked good faith is therefore without foundation. But the court not only erroneously found bad faith, it compounded its error by entirely disregarding the agency's *Vaughn* index and supporting declarations on this basis.

"[T]he remedy for a showing of bad faith is to review the agency affidavits with greater scrutiny, not to require disclosure of properly exempted documents." *Minier v. CIA*, 88 F.3d 796, 803 (9th Cir. 1996). Here, the district court flouted that principle by ordering the disclosure of documents without regard to whether they are subject to a FOIA exemption.

**1.** Indeed, for many of the documents there is no plausible ground for contesting the government's assertion of exemptions. We do not undertake here to comprehensively catalogue all the properly withheld records, and do not ask this Court to review the adequacy of each redaction in the first instance. Instead, we provide a few examples that

demonstrate that the district court's approach resulted in a plainly overbroad disclosure order, and we respectfully request that the order be vacated and the case be remanded with instructions to assess the redactions on their merits.

**Exemption 5:** ICE properly withheld certain records that are protected by the deliberative process privilege,[6] attorney-client privilege,[7] and the attorney work product doctrine.[8] *See U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (listing civil-litigation privileges encompassed by Exemption 5).

For example, the *Vaughn* index describes various communications by and among ICE attorneys regarding litigation strategy decisions. One

---

[6] "[T]he deliberative process privilege shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (quotation marks omitted).

[7] "The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010).

[8] The attorney work product doctrine covers "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its agent." *Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1022 (7th Cir. 2012) (alteration omitted) (quoting Fed. R. Civ. P. 26(b)(3)(A)).

such email chain "between three ICE attorneys" discusses "new information" and "request[s] input" as to whether the relevant legal analysis would change in light of that information. GA 29. In another email, "an ICE attorney has prepared a case update, provided opinions, and is seeking recommendations on strategy . . . for an upcoming hearing." GA 42-43. A third email chain "between ICE attorneys" represents a discussion of "litigation strategy" about whether an "individual is subject to mandatory detention, based on interpretation of the law and the reasoning of the legal argument identified in the email." GA 81. Such communications are plainly protected by Exemption 5. *See Vidal-Martinez v. U.S. Dep't of Homeland Sec.*, 84 F.4th 743, 748 (7th Cir. 2023) (explaining that Exemption 5 covered "ICE attorneys' work product prepared in anticipation of pending litigation, deliberations about ICE's decision to transfer [a detainee], and confidential advice provided by ICE attorneys to the [client] agency").

**Exemptions 6 and 7(C):** Recognizing that third parties have substantial privacy interests implicated in the documents at issue, the

agency made redactions to preserve those individuals' privacy. That was proper.

The agency redacted, for example, documents containing third parties' names, social security numbers, dates of birth, blood types, addresses, and signatures. *E.g.*, GA 77-78 (invoking Exemptions 6 and 7(C)). There are plainly significant privacy interests, and no apparent public interest, in that information, so the redactions were a correct application of FOIA's privacy exemptions. *See, e.g.*, *Henson v. Department of Health & Human Servs.*, 892 F.3d 868, 878 (7th Cir. 2018) (upholding the redaction under Exemption 6 of third-party "contact information" because "the revelation of personal identifying information tips the scales in favor of non-disclosure"); *Sherman v. U.S. Dep't of the Army*, 244 F.3d 357, 365 (5th Cir. 2001) ("[A]n individual's informational privacy interest in his or her [social security number] is substantial.").

The error in ordering the release of these materials is particularly stark because there is no basis for releasing private parties' sensitive information in response to a perceived inadequacy in the government's processing of a FOIA request and handling of related litigation. *Cf.* SA

23-24. After all, the privacy interest "belongs to the individual, not the agency holding the information." *Sherman*, 244 F.3d at 363. That means that an agency "cannot waive" third parties' "privacy interests—whatever it does or fails to do." *Lakin Law Firm, P.C. v. FTC*, 352 F.3d 1122, 1124 (7th Cir. 2003). To the contrary, disclosure of personal information without consent could violate the Privacy Act, which prohibits the disclosure of certain private information without consent except under specified circumstances. *See* 5 U.S.C. § 552a(b). But the district court's order requires, based on perceived inadequacies in the agency's filings in unrelated respects, the removal of redactions protecting those individuals' privacy. Once that "information is subject to disclosure," there is no further way to protect it—"it belongs to all." *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

**Exemption 7(E):** Finally, the agency properly withheld certain sensitive information under Exemption 7(E), which protects certain law-enforcement techniques and procedures. The *Vaughn* index indicates that the records sought include screenshots of agency databases and other documents divulging ICE's intranet URLs and law-

enforcement codes. *See* GA 22-24, 26, 27-28, 82. The agency's declarant explained this information "could assist unauthorized parties in deciphering the meaning of the codes, aid in gaining improper access to law enforcement databases, and assist in the unauthorized party's navigation of the law enforcement databases." GA 18. Those reasons suffice to invoke the exemption. *See Kowal*, 107 F.4th at 1033 (approving the invocation of Exemption 7(E) where "providing information on internal databases and file paths could aid in the commission of cyberattacks against the agency").

**2.** Even as to withholdings that might have been less self-evidently justified based on the record, the district court's blanket disclosure order was far too hasty. In general, a district court presented with insufficiently detailed *Vaughn* materials has several mechanisms through which to obtain an adequate factual basis for evaluating the agency's withholdings. For example, the reviewing court may "conduct in camera review of the challenged documents, permit the [a]genc[y] to submit an adequate *Vaughn* index summary instead, or opt for a combination of methods." *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 377 n.34 (4th Cir. 2009); *see also, e.g.*, *Transgender Law Ctr.*

*v. ICE*, 46 F.4th 771, 782 (9th Cir. 2022) (remanding with instructions "to direct the agencies to provide specific, non-conclusory *Vaughn* indices"); *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 150 (D.C. Cir. 2006) (remanding for "further explanation" where the agency did not supply "the minimal information necessary to make a determination" regarding the claimed FOIA exemptions (quotation marks omitted)).

Here, the district court recognized its authority to acquire additional information about ICE's basis for invoking the FOIA's exemptions. *See* SA 23 (citing *King v. U.S. Dep't of Justice*, 830 F.2d 210, 225 (D.C. Cir. 1987)). Thus, even on the erroneous assumption that the district court was entitled to refuse entirely to rely on the declaration that had already been submitted, its reasons for declining to require supplemental filings or to conduct an in camera inspection do not withstand scrutiny.

The court declined to permit the agency to file a supplemental *Vaughn* index because the agency had already filed one. SA 24. But as explained above, that supplemental filing merely corrected the inadvertent omission of several pages "that should have been included"

in the original version. *Id.* (quoting Dkt. No. 100, at 5). The agency has not had an opportunity to supplement its *Vaughn* index and declaration to address what the district court concluded are inadequacies in those filings.

The court also declined to conduct in camera review. "[*I*]*n camera* review may be particularly appropriate when . . . there is evidence of bad faith." *Quiñon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996). But here, despite its (erroneous) conclusion that the agency's declaration was submitted in bad faith, the district court declined to engage in such review, principally on the theory that the "volume of records [wa]s too cumbersome." SA 24. The volume of records is principally relevant insofar as it demonstrates the breadth of the district court's disclosure order. And the burdens associated with reviewing approximately 2000 pages further illustrate that any errors in the agency's submissions—prepared in response to the district court's order requiring the agency to process 1500 pages each month—were good-faith mistakes rather than evidence of bad faith.

But even taking the district court's conclusion on its own terms, if the court concluded that the review of approximately 2000 pages would

be too burdensome, it should have availed itself of ways of mitigating the burden. For example, the court could have ordered the agency to submit a representative sample of the documents for in camera inspection. *See EPA v. Mink*, 410 U.S. 73, 93 (1973). Sampling is "appropriately employed[] where . . . it would not realistically be possible to review each and every" document at issue. *Meeropol*, 790 F.2d at 958 (quotation marks omitted). Indeed, district courts have used that procedure successfully with much larger sets of documents than are at issue here. *See, e.g.*, *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1036-39 (7th Cir. 1998) (approving the in camera review of approximately 3000 pages when over 5 million pages were at issue). The district court never considered whether sampling would be appropriate here, however.

In short, the district court's blanket disclosure order disregarded record evidence that supported the government's claimed exemptions, eschewed available avenues to build a record that might have satisfied the district court, and ordered the disclosure of numerous documents whose release could harm sensitive government deliberations, personal

privacy, and law enforcement. Its order should be vacated, and the case remanded for adjudication of the claimed exemptions on the merits.

## CONCLUSION

For the foregoing reasons, the order of the district court should be vacated and this case remanded for further proceedings.

Respectfully submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*

MORRIS PASQUAL
*Acting United States Attorney*

DANIEL TENNY
*s/ Simon C. Brewer*
SIMON C. BREWER
*Attorneys, Appellate Staff*
*Civil Division, Room 7529*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 616-5367*
*Simon.C.Brewer@usdoj.gov*

March 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4916 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Simon C. Brewer*
Simon C. Brewer

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Simon C. Brewer*
Simon C. Brewer

## CIRCUIT RULE 30(d) STATEMENT

The short appendix and appendix include all of the materials required by Circuit Rule 30(a) and (b).

*s/ Simon C. Brewer*
Simon C. Brewer

# ADDENDUM

**5 U.S.C. § 552**

**§ 552. Public information; agency rules, opinions, orders, records, and proceedings**

**(a)** Each agency shall make available to the public information as follows:

. . .

**(3) (A)** Except with respect to the records made available under paragraphs (1) and (2) of this subsection, and except as provided in subparagraph (E), each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

. . .

**(4)**

. . .

**(B)** On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action. In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).

. . .

**(b)** This section does not apply to matters that are—

. . .

**(5)** inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested;

**(6)** personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

**(7)** records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, . . . [or] (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law . . . .

# SHORT APPENDIX

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JACQUELINE STEVENS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 22 C 5072** |
| | ) | |
| **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Jacqueline Stevens has filed suit against the Department of Health and Human Services and several other federal agencies, including Immigration and Customs Enforcement (ICE), under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. ICE has moved for summary judgment on the grounds that it has adequately completed Stevens's requests as defined by FOIA. Stevens has filed a cross-motion for summary judgment. For the reasons stated below, the Court grants Stevens's motions in part and denies it in part, and denies ICE's motion in full.

**Background**

The following facts are undisputed unless otherwise noted. Jacqueline Stevens is a professor at Northwestern University. In 2021 and 2022, Stevens submitted three FOIA requests to ICE, for records related to Miguel Guzman Silvestre, Toan Hoang, and Pascal Charpentier. The requests for Silvestre and Hoang sought the same information:

> 1) All records of all grievances filed by [the individual], orally or in writing and under the control of ICE or its components, including county jails or private prisons with which ICE has contracted. 2) Commissary account data, including but not limited to information tracking funds reimbursed to [the individual] on release from custody. 3) Work program participation documents and payment records. 4) All correspondence, notes, and other records pertaining to assertions or findings of U.S. citizenship from all databases. 5) Communications with police, jails, prisons about [the individual]'s arrest and detention. 6) Screen shots of all tabs for interfaces associated with databases likely to have records responsive to this request. 7) All email, faxes, notes, and all other analyses and records tied to ICE investigations or findings for any deportation orders or arrests of [the individual].[1]

*See* ICE's SOF ¶¶ 9, 26. The request for Charpentier sought similar information:

> 1) All records of all grievances filed by Mr. Charpentier orally or in writing and under the control of ICE or its components, including county jails or private persons with which ICE has contracted. 2) Commissary account data, including but not limited to information tracking funds reimbursed to Mr. Charpentier on release from custody. 3) All correspondence, notes, and other records pertaining to assertions or findings of U.S. citizenship, including but not limited to entries into PLAnet. 4) All ICE Fugitive Operation notes, memorandums, text messages, and other information in any medium related to the search and arrest of Mr. Charpentier. This includes but is not limited to database search protocols on which agents relied for information leading to the arrest. I am seeking all instructions in any form on which ICE employees relied in their search for the information that led to the arrest of Mr. Charpentier. 5) Screen shots of all tabs for interfaces to databases searched for information responsive to this request.

*Id.* ¶ 37. Stevens provided privacy waivers for Silvestre, Hoang, and Charpentier authorizing ICE to release its records to her. *Id.* ¶¶ 10, 27, 37.

In September 2022, Stevens brought this lawsuit against ICE and the other agencies, alleging they had improperly withheld records in response to her FOIA requests. In her complaint, Stevens asserted three claims against ICE for violations of FOIA: failure to comply with statutory deadlines (Count 1), failure to grant requests for

[1] With regard to point (4), Stevens also requested "records tied to proceedings in Los Angeles in 1999" related to Mr. Hoang.

expedited processing (Count 2), and unlawful withholding of agency records (Count 3). Compl. ¶¶ 101–116. Stevens moved for a preliminary injunction, which this Court granted on March 30, 2023, ordering ICE "to process 1,500 pages of documents responsive to Stevens's FOIA request per month until production is complete." *Stevens v. U.S. Dep't of Health & Hum. Servs.*, 666 F. Supp. 3d 734, 749 (N.D. Ill. 2023).

In April 2024, Fernando Pineiro Jr., the FOIA Director of ICE, filed a declaration detailing ICE's search for the requested records. Pineiro affirms that ICE's various program offices found approximately 13,703 pages of potentially responsive records. *See* ICE's SOF ¶¶ 28, 31, 45, 50, 52, 55, 58, 60, 66. Of these, "ICE produced 2,802 pages of responsive records to Stevens over the course of seventeen productions." ICE's SOF ¶ 51. ICE withheld certain information from these records, alleging that such redactions were proper under FOIA Exemptions 5, 6, 7(C), and 7(E). ICE also "prepared a *Vaughn* index that provides descriptions of ICE's withholdings and the exemption that ICE applied." *Id.* ¶ 52. Stevens challenged the adequacy of this first *Vaughn* index because "some of the pages that the parties agreed would be included on ICE's *Vaughn* index did not appear on the *Vaughn* index that ICE submitted with its motion for summary judgment." ICE's Consol. Reply in Supp. of Mot. for Summ. J. & Resp. to Pl.'s Cross-motion for Summ. J. at 5 (citing Pl.'s Opp. to ICE's Mot. for Summ. J. & Cross-motion for Summ. J. at 6–7). ICE conceded that it "inadvertently omitted a number of pages from its *Vaughn* index that should have been included." *Id.* The Court granted ICE's motion to prepare a supplemental *Vaughn* index to correct the omissions, and ICE has submitted a supplemental *Vaughn* index and accompanying declaration. *See* ICE's SOAF, Ex. B, Attach. A.

ICE contends that it has completed an adequate search "and produced the responsive records it found that are not subject to one or more exceptions to the FOIA statute." Mem. in Supp. of ICE's Mot. for Summ. J. at 1. Accordingly, ICE asserts that it is entitled to entry of summary judgment in its favor. *See, e.g.*, *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994) ("In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA.").

In response, Stevens contends that the burden is on ICE to show it has "conducted a good faith and reasonable search for the 'agency records' requested and to justify any withholdings or redaction in the production." Pl.'s Opp. to ICE's Mot. for Summ. J. & Cross-motion for Summ. J. at 2. Stevens asserts that ICE has failed to carry this burden and therefore "summary judgment should be denied and a final judgment entered" in Stevens's favor. *Id.* Stevens has also filed a cross-motion seeking summary judgment for Counts 1 and 3 of her complaint.

**Discussion**

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "On cross-motions for summary judgment, [the court] construe[s] all facts and inferences therefrom in favor of the party against whom

the motion under consideration was made." *Five Points Rd. Joint Venture v. Johanns*, 542 F.3d 1121, 1124 (7th Cir. 2008).

For the sake of addressing the motion and cross-motion in an orderly fashion, the Court will first address Stevens's cross-motion seeking summary judgment on Count 1 before moving on to addressing the arguments in both parties' motions on Count 3.[2]

**A. Failure to comply with statutory deadlines (Count 1)**

Stevens first moves for summary judgment on Count 1, asserting that ICE has failed to comply with FOIA's requirement under section 552(a)(6). Section 552(a)(6)(A) states:

> Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall determine within 20 days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor.

5. U.S.C. § 552(a)(6)(A)(i)(I) (cleaned up). Section 552(a)(6) also allows for an "extension" of no more than "ten working days" upon a showing of "unusual circumstances" as defined by the subsection. *Id.* § 552(a)(6)(B)(i). To qualify for the extension, an agency must provide "written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." *Id.*

Stevens contends that summary judgment in her favor on Count 1 is warranted because ICE "does not and cannot dispute that it did not comply with the statutory

[2] Stevens does not seek summary judgment on Count 2 because "[t]he Court granted Plaintiff's Request for Preliminary Injunction and ordered ICE to process Plaintiff's request. The count is thus now moot as Plaintiff has obtained some of the relief she was seeking in Count [2] and the Court cannot grant further substantive redress" at this time. Pl.'s Opp. to ICE's Mot. for Summ. J. & Cross-motion for Summ. J. at 3 n.1.

command regarding acknowledging, docketing, and/or responding to Plaintiff's FOIA requests" and that "Congress provided a remedy in 5 U.S.C. § 552(a)(4)(B)." Pl.'s Opp. to ICE's Mot. for Summ. J. & Cross-motion for Summ. J. at 3, 5.

ICE concedes that it did not send determinations for any of the three FOIA requests at issue. *See* ICE's Consol. Reply in Supp. of Mot. for Summ. J. & Resp. to Pl.'s Cross-motion for Summ. J. at 4 ("When ICE did not respond within 20 business days to the requests that she submitted . . . that gave her the right to sue to procure the records . . . ."). ICE, however, asserts that this failure on its part to meet section 552(a)(6)'s statutory deadline "merely triggers the FOIA requester's *right to file suit* in federal court." *Id.* at 3.

Section 552(a)(4)(B) states: "On complaint, the district court of the United States in the district in which the complainant resides . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). In other words, section 552(a)(4)(B) creates the requisite jurisdictional hook to allow a federal court to adjudicate the matter once section 552(a)(6)'s deadline has passed. *See Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 139 (1980) (noting that section 552(a)(4)(B) "vests jurisdiction in federal district courts"). Though this section does create both a federal cause of action and remedy, as Stevens contends, it does not go as far as Stevens seemingly would like. The Court has already issued a preliminary injunction ordering ICE to "process Stevens's FOIA request at a rate of 1,500 pages per month." *Stevens*, 666 F. Supp. 3d at 749. Therefore, any relief sought by Stevens under this section has already been granted, making entry of summary judgment in

Stevens's favor on this particular point inappropriate. Stevens also challenges the adequacy of ICE's disclosures, but that is a separate analysis addressed by the Court below. *See, e.g.*, *U.S. Dep't of Just. v. Tax Analyst*, 492 U.S. 136, 151 n.12 (1989) ("Even when an agency does not deny a FOIA request outright, the requesting party may still be able to claim 'improper' withholding by alleging that the agency has responded in an *inadequate* manner.") (emphasis added).

As a separate matter, even if the Court were to grant summary judgment in favor of Stevens on Count 1, it's worth asking what specific relief she could expect from the Court beyond what it has already done. The Court has ordered ICE to comply with the FOIA request under the expedited timeline referenced above, and ICE contends via its motion for summary judgment that it has complied with the preliminary injunction order. If the Court determines that ICE has adequately searched for the requested records or that the records in question qualify for one of FOIA's nine exemptions, then there is no further relief for the Court to provide under Count 1. *See, e.g.*, *Kissinger*, 445 U.S. at 139 ("When an agency has demonstrated that it has not 'withheld' requested records in violation of the standards established by Congress, the federal courts have no authority to order the production of such records under the FOIA.").

Accordingly, the Court denies Stevens's motion for summary judgment on Count 1.

**B. Unlawful withholding of agency records (Count 3)**

Stevens next challenges the adequacy of ICE's searches for records related to Miguel Guzman Silvestre, Toan Hoang, and Pascal Charpentier in three respects. First, Stevens contends that ICE failed to adequately search for the portion of her FOIA

request "seeking prison grievances, commissary account data, and work program participation." Pl.'s Opp. to ICE's Mot. for Summ. J. & Cross-motion for Summ. J. at 8. Second, Stevens challenges ICE's proffered affidavit because, she contends, it does not contain a sufficient explanation of why ICE elected to search certain databases and not others for the requested records. Third, Stevens asserts that ICE failed to adequately search for responsive records because ICE used "a narrow and unreasonable selection of search terms." *Id.* at 9.

Stevens also challenges ICE's reliance on FOIA exemptions to justify its withholding of responsive records. This amounts to a challenge to the sufficiency of ICE's proffered *Vaughn* index and accompanying declaration. Stevens also separately challenges whether ICE reasonably segregated the exempted material as required by FOIA. *See* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

The Court will address each argument in turn, beginning with the adequacy of the searches before turning to the *Vaughn* index, and finishing with whether ICE reasonably segregated the exempted portions of the responsive records.

**1. Adequate searches**

The Supreme Court has stated that FOIA is "broadly conceived" and that "its basic policy is in favor of disclosure." *NLRB v. Robbins Tire and Rubber Co.*, 437 U.S. 214, 220 (1978) (citations and quotation marks omitted); *see id.* at 242 ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors

accountable to the governed."). The plain language of FOIA places an affirmative duty on agencies, requiring that "each agency, upon any request for records which (i) reasonably describes such records . . . *shall* make the records *promptly* available to any person." 5 U.S.C. § 552(a)(3)(A) (emphases added).

FOIA also places the burden on agencies to justify any withholding of records responsive to a request for disclosure. *See id.* § 552(a)(4)(B). Courts have interpreted this to place a burden on an agency to show that its search in response to a FOIA request was adequate. *See Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 387 (7th Cir. 2015) ("To prevail on summary judgment in this type of FOIA claim, the agency must show that there is no genuine issue of material fact about the *adequacy* of its records search." (emphasis added)); *Carney*, 19 F.3d at 812 ("In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate . . . .").

"To demonstrate that its search was adequate, 'the agency must show that it made a good faith effort to conduct a search for the requested records, using methods reasonably expected to produce the information requested.'" *Rubman*, 800 F.3d at 388 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "[R]easonableness is a flexible and context-dependent standard." *Stevens v. U.S. Dep't of State*, 20 F.4th 337, 342 (7th Cir. 2021) (citation and quotation marks omitted). "Good faith is presumed," and an agency can bolster this presumption by producing evidence showing its efforts to satisfy the request, like affidavits. *Id.* The presumption of good faith requires courts "to credit the agency's sworn statements in the absence of evidence to the contrary." *Id.* at 342–43.

An agency may submit affidavits to support that its search was adequate, "so long as they are non-conclusory and reasonably detailed." *Id.* at 343. To be sufficiently detailed, an affidavit must "set forth the search terms used in electronic searches and the kind of search performed by the agency, and aver that all files likely to contain responsive documents were searched." *Henson v. Dep't of Health & Hum. Servs.*, 892 F.3d 868, 875 (7th Cir. 2018). Though "[t]here is no requirement that an agency search every record system," if an agency does limit its search to certain databases, "[a]t the very least, [the agency is] required to explain in its affidavit that no other record system was likely to produce responsive documents." *Oglesby*, 920 F.2d at 68.

A FOIA requester can rebut the presumption of good faith by presenting "countervailing evidence as to the adequacy of the agency's search." *Rubman*, 800 F.3d at 387. If, based on review of this evidence, the court finds the agency's search was inadequate, the FOIA requester must then "show some reason to think that the document would have turned up if the agency had looked for it, though since neither the requester nor the court know the content of the agency's records, this is a low bar." *Id.* "[T]he question at summary judgment is not whether the agency *might* have additional, unidentified responsive documents in its possession. Rather the court need only determine whether the search itself was performed reasonably and in good faith." *Id.* (internal citation omitted).

ICE has submitted the declaration of Fernando Pineiro Jr., ICE's FOIA Director, to support its position that it adequately searched for the requested records. Pineiro states that "ICE records are maintained by leadership offices and/or within ICE directories, *including but not limited to*, the ICE FOIA Office, the Homeland Security

Investigations (HSI), the Office of Enforcement and Removal Operations (ERO), the ICE FOIA Office, and the Office of the Principal Legal Advisor (OPLA)." Pineiro Decl. ¶ 13 (emphasis added). It is apparent from the way Pineiro worded this that his declaration does not contain a full list of program offices where ICE maintains its records, nor does it explain why he listed only four program offices as potential locations where responsive records may be found.[3] Each program office is "typically staffed with a designated point of contact (POC) who is the primary point person responsible for communications between that program office and the ICE FOIA Office." *Id.* According to Pineiro, "[e]ach POC is a person with detailed knowledge about the operations of his/her respective program office." *Id.*

Pineiro's declaration affirms that "[u]pon receipt of a proper FOIA request, the ICE FOIA Office will identify which program offices, based upon their experience and knowledge of ICE's program offices, within ICE are reasonably likely to possess records responsive to that request, if any, and task the relevant program offices with searches." *Id.* ¶ 14. In turn, the POCs at each program office review the FOIA request and, "based on their experience and knowledge of their program office practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any." *Id.* These employees or component offices then "conduct searches of their file systems, including both paper files and electronic files, which in their judgment, based on their knowledge of the manner in which they routinely keep

[3] Though paragraph 13 of Pineiro's declaration lists five offices, "the ICE FOIA Office" is listed twice, with no indication regarding whether this duplication was intentional or in error. *See* Pineiro Decl. ¶ 13.

records, would most likely be the files to contain responsive documents." *Id.* Upon completion of these searches, the component offices send the potentially responsive records to their program office's POC, who then provides them to the ICE FOIA Office. "The ICE FOIA Office then reviews the collected records for responsiveness and the application of appropriate FOIA Exemptions." *Id.*

To recap, then, once ICE has determined that a FOIA request is valid, its central FOIA office determines the program office(s) to which it will direct the request. In turn, the program office(s) determine which individual employee(s) or component office(s) should conduct the actual search for potentially responsive documents. At each step, an ICE employee uses his or her knowledge and experience to winnow down locations containing potentially responsive documents. As previously mentioned, Pineiro's declaration provides no insight or explanation into the total number of program offices or how many component offices are contained within the program offices it does list.

This lack of detail regarding the program offices and their component offices is concerning. The Seventh Circuit has repeatedly emphasized that affidavits used to support the adequacy of an agency's search must be "reasonably detailed," which includes an averment "that all files likely to contain responsive documents were searched." *Henson*, 892 F.3d at 875; *see also Rubman*, 800 F.3d at 387; *Stevens*, 20 F.4th at 343. This reasonably detailed affidavit "is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." *Oglesby*, 920 F.2d at 68. And ICE's lack of explanation regarding the scope of program offices and corresponding component offices makes it difficult for the Court to assess whether

ICE "used methods reasonably expected to produce the information requested." *Rubman*, 800 F.3d at 388.

Though the lack of insight regarding the scope of FOIA's program offices is concerning, it is not yet fatal. ICE can still show its search was adequate by "explain[ing] in its affidavit that no other record system was likely to produce responsive documents." *Oglesby*, 920 F.2d at 68. In response to all three of Stevens's requests, ICE searched in three program offices: ERO, HSI, and OPLA. *See* ICE's SOF ¶¶ 11, 28, 38. Pineiro asserts that these offices were determined, based on the subject matter of Stevens's requests, to be the places "likely to have responsive records (if such records existed)." Pineiro Decl. ¶ 20. Therefore, Pineiro contends that "all locations likely to contain records responsive to Plaintiffs' FOIA Requests (to the extent that they exist within ICE's custody) were searched." *Id.*

The following information regarding ICE's program offices comes from Pineiro's declaration. "ERO is responsible for arrest and removal of aliens, managing ICE detention operations and providing medical and mental health care to persons in ICE custody." *Id.* ¶ 21. "ERO manages all logistical aspects of the removal process, including domestic transportation, detention, alternatives to detention programs, bond management, and supervised release." *Id.* ¶ 22. "HSI is the principal investigative arm of DHS, responsible for investigating transnational crime and threats . . . ." *Id.* ¶ 21. In addition to its investigative duties, "HSI oversees the agency's international affairs operations and law enforcement intelligence functions." *Id.* ¶ 25. Finally, "OPLA serves as the exclusive representative of DHS in immigration removal proceedings before the [Executive Office for Immigration Review], litigating all removal cases" and also

"provides a full range of legal services to ICE programs and offices," including "legal advice and prudential counsel." *Id.* ¶ 26.

**a. Search for specific responsive records**

In her cross-motion, Stevens first contends that ICE failed to adequately search for responsive records related to prison grievances, commissary account data, and work program participation.[4]

The Court finds that Pineiro's declaration is not sufficiently detailed to show that ICE adequately searched for the requested records. Notably lacking from the declaration is an *explanation* of why only these program offices were selected to search for responsive records related to the full scope of Stevens's request, an omission that is exacerbated by the fact that Pineiro does not appear to identify the full scope of ICE program offices. Pineiro offers a statement that "[a]ccordingly, and based on the information described below, all locations likely to contain records responsive to Plaintiff's FOIA Requests (to the extent that they exist within ICE's custody) were searched." Pineiro Decl. ¶ 20. Yet, parsing the remainder of Pineiro's declaration, the information he references as forthcoming ("described below") is nowhere to be found. Pineiro does describe the specific search terms used and databases searched, but he does not provide an *explanation* regarding why "no other record system was likely to produce responsive documents" related to prison grievances, commissary account data, and work program participation. *See Oglesby*, 920 F.2d at 68; *cf. Explain*, Merriam-Webster, https://www.merriam-webster.com/dictionary/explain (last visited Jan. 13,

[4] Stevens did not request work program participation material for Charpentier, but only for Silvestre and Hoang. *See* ICE's SOF ¶¶ 9, 26, 37.

2025) (defining "explain" as "to make known; to make plain or understanding; to give the reason for or cause of; or to show the logical development or relationship of"). In essence, ICE is asking the Court to take Pineiro's bottom-line word for it without the benefit of any reasoning or justification.

Pineiro's declaration is inadequate for a second reason: it does not sufficiently explain which of the potentially responsive records found in each of the program offices for each of the individual requests were ultimately produced to Stevens. For example, Pineiro attests that searches related to Silvestre produced a total of 4 potentially responsive records that were then "sent to the ICE FOIA Office for review and processing." Pineiro Decl. ¶¶ 28, 31, 45. Searches related to Hoang produced a total of 59 potentially responsive records that were likewise sent to the ICE FOIA Office for review and processing. *Id.* ¶¶ 50, 52, 55. Finally, searches related to Charpentier produced a total of 13,640 potentially responsive records, with 13,601 of those records coming from OPLA. *Id.* ¶¶ 58, 60, 66. Pineiro then states that "2,802 pages of records were released to Plaintiff on a rolling basis." *Id.* ¶ 69. But Pineiro never sufficiently explains—never explains at all, really—which, or which categories, of the potentially responsive records made it into this final 2,802 page pool. The Court is thus left wondering whether *any* of the potentially responsive records related to Silvestre or Hoang were ultimately produced to Stevens; without such an explanation, it is possible that the entirety of the 2,802 pages that were released could have come entirely from OPLA's search for Charpentier's records.

Though ICE is afforded the presumption of good faith, Stevens has supplied the requisite evidence to "raise substantial doubt [about the adequacy of the search]" by

providing her "well defined requests" and pointing to "positive indications of overlooked materials." *See Rubman*, 800 F.3d at 387. In particular, Stevens contends that there are over 10,000 pages of documents that ICE identified as potentially responsive but that were withheld without a sufficient explanation or description of which program office they came from, or even to which request they relate. Based on the record, no reasonable factfinder could find that ICE performed its search reasonably and in good faith. This is not a question of whether ICE "*might* have additional, unidentified responsive documents in its possession." *Id.* Rather, ICE has affirmed that there *are* over 10,000 pages of potentially responsive documents found by the various program offices, yet it has not sufficiently explained how it determined which of these pages to produce "to allow the . . . court to determine if the search was adequate." *Oglesby*, 920 F.2d at 68.

Accordingly, because Pineiro's declaration fails to provide the requisite explanation for the three FOIA requests at issue, the Court finds that ICE is not entitled to summary judgment and denies its motion with regard to the adequacy of its search. Instead, the Court grants Stevens's motion with regard to the insufficiency of the search for the portion of her FOIA requests seeking prison grievances, commissary account data, and work program participation. ICE must either redo the search or submit another declaration averring and *explaining* why no other program offices are likely to contain these specific responsive records, or both, by no later than January 30, 2025. The Court acknowledges that this is a short deadline, but that is warranted based on the fact that we are well over two years down the road in this case—and over three years down the road from Stevens's FOIA requests—and ICE has apparently been unable to

produce a declaration that comes close to eliminating genuine factual disputes regarding its searches and production.

The Court will address the remainder of Stevens's and ICE's motions regarding the sufficiency of the individual searches to guide ICE's new search and affidavit.

**b. Databases searched**

Stevens challenges whether ICE provided sufficient details about the agency's systems of records and its decision to search only certain databases and not others. This dovetails with the Court's analysis above, so the Court will not repeat that here. The Court is not persuaded by Stevens's argument that Pineiro's declaration lacks sufficient detail because it "does not state the name of the database searched" but merely states that ICE searched "databases." Pl.'s Opp. to ICE's Mot. for Summ. J. & Cross-motion for Summ. J. at 8. ICE is not required to search every database. *See Oglesby*, 920 F.2d at 68 ("There is no requirement that an agency search every record system."). ICE must only set forth, through a sufficiently detailed affidavit, "the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." *Id.* Part of this—which the Court has determined to be lacking here—must be an explanation supporting the proposition "that no other record system was likely to produce responsive documents" so that the Court can "determine if the search was adequate." *Id.*

Stevens raises this objection for all three FOIA requests. But given the slight differences between these requests, it is reasonable for ICE to search different databases. ICE needs only to provide the required explanation, in sufficient detail,

regarding why, for each individual request, it elected to search the databases it did (and not others).

**c. Search terms used**

Stevens next asserts that ICE failed to adequately search because it used "a narrow and unreasonable selection of search terms." Pl.'s Opp. to ICE's Mot. for Summ. J. & Cross-motion for Summ. J. at 9.

**i. Miguel Silvestre**

To support this contention for Miguel Silvestre, Stevens points to the singular fact that OPLA's "search terms for searches in PLAnet omit 'Guzman' entirely," despite ICE's "system of records show[ing] 'Guzman Silvestre, Miguel A#' as the nomenclature used for Mr. Silvestre." *Id.* Pineiro confirms in his declaration that OPLA searched the PLAnet database "using the subject's full alien number, the last three digits of his alien number, 'Silvestre,' and 'Miguel Silvestre.'" Pineiro Decl. ¶¶ 35–36.

The Court finds Stevens's argument unpersuasive. Stevens does not assert that Silvestre is referenced in any requested record using only the name "Guzman." Therefore, it is reasonable to believe—as ICE contends—that any search for the terms "Silvestre" or "Miguel Silvestre" would naturally capture instances mentioning "Miguel Guzman Silvestre" or "Guzman Silvestre, Miguel A#." And on this point, the burden is on Stevens to "show some reason to think that the documents would have turned up if the agency had looked for it." *See Rubman*, 800 F.3d at 387 (citation and quotation marks omitted). Stevens has not shown that there is any reason to think that searching the additional term "Guzman" would produce any records not already found using the above mentioned search terms. No reasonable factfinder could find otherwise.

**ii. Toan Hoang**

Stevens next challenges the scope of search terms used for Toan Hoang because "OPLA searched for 'Tom Hoang' rather than 'Toan Hoang.'" Pl.'s Opp. to ICE's Mot. for Summ. J. & Cross-motion for Summ. J. at 9. Pineiro's declaration provides no explanation for OPLA's decision to search using only "Tom Hoang" when the requested records were for "Toan Hoang." *See* Pineiro's Decl. ¶¶ 53–55. At no point does Pineiro assert that "Tom Hoang" is a known alias of "Toan Hoang" or that OPLA would only have records listing his name as "Tom Hoang" rather than "Toan Hoang."

Unlike the search terms used for Silvestre, the Court finds that OPLA's failure to search using the term "Toan Hoang," and Pineiro's corresponding lack of any explanation, is sufficient to show that ICE's OPLA program office did not conduct a reasonable, good faith search for the requested records related to Toan Hoang. ICE must direct OPLA to redo the search using a broader scope of terms *and* provide a sufficient explanation for its decision to use the search terms it selects. ICE must file a new affidavit explaining how it conducted its search by January 30, 2025. Stevens must file any response to this submission by February 13, 2025. The parties should be prepared to discuss the adequacy of this new affidavit and search at the status hearing set for February 20, 2025.

**iii. Pascal Charpentier**

Stevens next challenges the scope of search terms used for Pascal Charpentier. In particular, Stevens asserts that OPLA's New York office did not "search for any records for 'Pascual Carpenter' despite the fact that the Notice to Appear identified the

name as an 'a/k/a.'" Pl.'s Opp. to ICE's Mot. for Summ. J. & Cross-motion for Summ. J. at 9. This document does confirm that Pascal Charpentier has the known alias of Pascual Carpenter. *See id.*, Ex. 2 at 59. Pineiro's declaration contains no explanation or acknowledgement regarding why this known alias of Charpentier was not included in OPLA's search terms. Accordingly, the Court finds that Pineiro's declaration does not contain a sufficient explanation to show that ICE reasonably searched for Charpentier's requested records. ICE must direct OPLA to redo the search using a fuller scope of terms, specifically to include the alias "Pascual Carpenter," and provide a sufficient explanation for how it decided to conduct the search. As previously stated, ICE must file a new affidavit explaining how it conducted its search by January 30, 2025, and Stevens must file any response by February 13, 2025.

**2. FOIA exemptions**

FOIA requires a federal agency to disclose records in its possession following a valid request for such records. 5 U.S.C. § 552(a). An agency may withhold a responsive record only if the agency can show that the record meets one of nine exemptions. *See id.* § 552(b); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975) ("As the Act is structured, virtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions."). Because FOIA is interpreted broadly and in favor of disclosure, "FOIA exemptions are to be narrowly construed." *U.S. Dep't of Just. v. Julian*, 486 U.S. 1, 8 (1988).

An agency bears the burden to prove "by a preponderance of the evidence that a withheld document falls within one of the exemptions." *Enviro Tech Int'l, Inc. v. EPA*,

371 F.3d 370, 374 (7th Cir. 2004). To support its use of FOIA exemptions, ICE has supplied a *Vaughn* index describing the withheld material and justifying its nondisclosure. *See Vaughn v. Rosen*, 484 F.2d 820, 826–27 (D.C. Cir. 1973). Stevens challenges ICE's reliance on exemptions 5, 6, 7(C), and 7(E).

The Court finds that ICE has failed to sufficiently support its withholdings via its *Vaughn* index and accompanying declaration. As an initial matter, the *Vaughn* index is at the very least incomplete. "A withholding agency must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information." *King v. U.S. Dep't of Just.*, 830 F.2d 210, 223 (D.C. Cir. 1987). At points throughout the *Vaughn* index, ICE disavows the exemption listed and instead claims to withhold the information under a different exemption without saying anything further. For instance, ICE initially claimed to withhold the "[f]inal page of a court filing dated September 14, 2020" under Exemption 5, but then states that "[u]pon further consideration, ICE no longer claims the (b)(5) exemption as to this information and instead claims exemptions (b)(6) and (b)(7)(C)." ICE's SOF, Attach. A, ECF No. 89 p. 47 of 84.

Having noted this example, the Court would like address this claimed exemption more fully. To be blunt, these redactions are egregious. Most obviously, the redacted record is a *publicly filed document readily available on a public docket*. In other words, ICE contends that information that is available to *every member of the public* must be redacted because it risks revealing "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), or because it contains "records or information compiled for law

enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy," *id.* § 552(b)(7)(C). This is ludicrous. In no universe does publicly available information ever risk a *clearly unwarranted* invasion of privacy. And it is preposterous for ICE to assert that the *name and phone number of the attorney of record* could possibly qualify as information compiled for law enforcement purposes. It does not. This is made even more clear by the fact that *the name and contact information of the attorney of record*, which ICE redacted, *is publicly listed on the very docket used to download the publicly available court filing*. Again, this asserted redaction by ICE defies comprehension. The agency's redaction of this information screams of bad faith and firmly rebuts the presumption of good faith afforded to it. The Court is left wondering whether anyone (and if so, who) vetted these sorts of assertions before they were included in the *Vaughn* index and before the index was filed with the Court. This is a blatant misuse of FOIA Exemptions 6 and 7(C).[5]

As a second point of support for the Court's determination, Pineiro's declaration contains clearly erroneous statements showing a lack of attention to detail and accuracy. In particular, Pineiro's declaration states that the proffered *Vaughn* index has five columns, and describes what information each column contains. *See* Pineiro Decl. ¶ 68. Yet this description, sworn by Pineiro to be accurate, is just plain wrong*:* the *Vaughn* index contains four columns, not five. *See* ICE's SOF, Attach. A. Though this may seem like a small point, it underscores the proposition that the *Vaughn* index was

[5] Equally preposterously, ICE claims Exemptions 6 and 7(C) to justify redacting similar information on another publicly filed court document. *See* ICE's SOAF, Attach. A, at 8–9.

not prepared by ICE in good faith. *See King*, 830 F.2d at 218 ("The significance of agency affidavits in a FOIA case cannot be underestimated. As, ordinarily, the agency alone possess knowledge of the precise content of documents withheld, the FOIA requester and the court both must rely upon its representations for an understanding of the material sought to be protected."). If Pineiro—and whoever prepared the *Vaughn* index for his review—did not take the time to actually review it closely enough to see that it contained a basic error regarding the number of columns in the index, the Court cannot help but wonder what other shortcuts were taken and what other errors and omissions were overlooked. For instance, Pineiro asserts that "[a] line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied." Pineiro Decl. ¶ 100. But given the inaccuracy of Pineiro's statement describing the organization of the *Vaughn* index itself, why should this Court believe that actually was done? Further, as the Court noted above, information in publicly filed documents was redacted that *clearly* does not fall under Exemption 7(C), and no reasonable factfinder could find that it does.

Given that the *Vaughn* index lacks sufficient detail, and the accompanying declaration has been shown to be unreliable, the Court finds that ICE has not carried its burden to withhold information under any of FOIA's exemptions. The remaining question, then, is what should happen next. When the *Vaughn* index and declaration provide an insufficient basis to justify withholdings under a FOIA exemption, the district court "may employ any of several measures to acquire enough information to conduct the review requisite." *King*, 830 F.2d at 225.

> The District Court may, in its discretion, order production of the excised material or some sample thereof for in camera inspection. An opportunity

> for first-hand inspection enables the court to determine whether the weakness of the affidavits is a result of poor draftsmanship or a flimsy exemption claim, but the district court's inspection prerogative is not a substitute for the government's burden of proof, and should not be resorted to lightly. Moreover, should the task of in camera examination appear too burdensome, the court may allow appellant to engage in further discovery, or order the [agency] to supplement its *Vaughn* filings.

*Id.* (cleaned up).

The Court orders ICE to produce the records in full. The volume of records is too cumbersome to allow for in camera review, and ICE has already been afforded the opportunity to file a supplemental *Vaughn* index after its first *Vaughn* index admittedly "omitted a number of pages . . . that should have been included." ICE's Consol. Reply in Supp. of Mot. for Summ. J. & Resp. to Pl.'s Cross-motion for Summ. J. at 5. ICE does not get continual bites at the apple, and permitting it to file *another* supplemental *Vaughn* index in light of lack of good faith as described above would only reward its delay. After two years, enough is enough. ICE must produce all responsive records to Stevens, without redaction, by January 30, 2025, along with its new affidavit, as it has completely failed to carry its burden that any exemptions are warranted.

**3. Reasonably segregated**

Section 552(b) states:

> Any reasonably segregable portion of the record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection. The amount of information deleted, and the exemption under which the deletion is made, shall be indicated on the released portion of the record, unless including that indication would harm an interest protected by the exemption in this subsection under which the deletion is made. If technically feasible, the amount of the information deleted, and the exemption under which the deletion is made, shall be indicated at the place in the record where such deletion is made.

5 U.S.C. § 552(b). Courts have interpreted this to require that "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *PHE, Inc. v. Dep't of Just.*, 983 F.2d 248, 252 (D.C. Cir. 1993); *see also Patterson v. I.R.S.*, 56 F.3d 832, 841 (7th Cir. 1995). A determination that an agency reasonably segregated exempt information from disclosed records is a separate finding from whether an agency properly qualifies for an exemption. *See Patterson*, 56 F.3d at 840; *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) ("A district court that simply approves the withholding of an entire document without entering a finding of segregability, or the lack thereof, errs." (cleaned up)).

The Court finds that ICE has not met its burden to show that it released all reasonably segregated, non-exempt information to Stevens. The Court has already addressed above why the *Vaughn* index is insufficient to carry ICE's burden for certain claimed exemptions. And the egregiousness of several of ICE's claimed exemptions leads the Court to find that ICE has not acted in good faith when compiling the *Vaughn* index.

In sum, the Court grants Stevens's motion for summary judgment on Count 3 and orders ICE to produce to Stevens , without redaction, all documents identified as responsive no later than January 30, 2025.

**Conclusion**

In conclusion, the Court denies Stevens's motion for summary judgment [dkt. no. 96] on Count 1 but grants her motion on Count 3. The Court denies ICE's motion for summary judgment [dkt. no. 87] in full and orders ICE to produce all responsive records, without redaction, to Stevens by January 30, 2025. The Court also orders ICE to redo

the search for responsive records for Silvestre, Hoang, and Charpentier and submit a new affidavit sufficiently explaining how it conducted its search such that it meets the parameters the Court has outlined above. In addition, Count 2 is dismissed as moot.

MATTHEW F. KENNELLY
United States District Judge

Date: January 16, 2025