No. 25-1126

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

———————————

JACQUELINE STEVENS,

Plaintiff-Appellant,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

Defendants-Appellees.

———————————

On Appeal from the United States District Court for the Northern
District of Illinois, No. 1:22-cv-5072 (Matthew F. Kennelly, J.)

———————————

**APPENDIX FOR APPELLANT**

———————————

YAAKOV M. ROTH
   *Acting Assistant Attorney
   General*

MORRIS PASQUAL
   *Acting United States Attorney*

DANIEL TENNY
SIMON C. BREWER
   *Attorneys, Appellate Staff
   Civil Division, Room 7529
   U.S. Department of Justice
   950 Pennsylvania Avenue NW
   Washington, DC 20530
   (202) 616-5367*

# TABLE OF CONTENTS

**Page**

Declaration of Fernando Pineiro, Ex. A. to ICE's Loc. R. 56.1 Statement, ECF No. 89..............................................................GA 1

*Vaughn* Index, Att. A to Declaration of Fernando Pineiro, ECF No. 89......................................................................................GA 21

Supplemental Declaration of Fernando Pineiro, Ex. B. to ICE's Loc. R. 56.1(b)(3) Statement, ECF No. 101 ........................GA 60

Supplemental *Vaughn* Index, Att. A to Supplemental Declaration of Fernando Pineiro, ECF No. 101 ............................GA 69

Transcript of Motion Hearing (Jan. 29, 2025) ...................................GA 83

| | |
|---|---|
| JACQUELINE STEVENS | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | )     Case No. 22 C 5072 |
| | ) |
| UNITED STATES DEPARTMENT OF | )     Judge Kennelly |
| HEALTH AND HUMAN SERVICES, *et al.,* | ) |
| | ) |
| | ) |
| | ) |
| *Defendants*. | ) |
| | ) |
| ——————————————————— | ) |

## <u>DECLARATION OF FERNANDO PINEIRO</u>

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.  I am the FOIA Director of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office. I have held this position since August 14, 2022, and I am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C § 552 (the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access statutes and regulations. Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013, to August 13, 2022, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS"). The ICE FOIA office mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

2.  As the FOIA Director my official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office regarding the processing of FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. In connection with my official duties and responsibilities, I am familiar with ICE's procedures for responding to requests for information pursuant to the FOIA and the Privacy Act.

3.  I make this declaration in support of ICE's Motion for Summary Judgment in the above-captioned action. The statements contained in this declaration are based upon my personal

knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

4. This declaration provides a description of how ICE received Plaintiffs' three FOIA requests, how ICE searched for and processed records in response to Plaintiffs' FOIA requests, and how ICE disclosed records located in response to Plaintiffs' FOIA requests.

5. In addition, in accordance with the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration explains the basis for withholding portions of the requested information pursuant to FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). **ICE's *Vaughn* Index is attached hereto as Attachment A**.

## I. PROCEDURAL HISTORY OF THE PLAINTIFFS' FOIA REQUESTS AND THE INSTANT LITIGATION

6. This suit stems from three separate FOIA requests Plaintiffs sent to ICE. **A true and complete copy of Plaintiffs' FOIA Requests to ICE are attached hereto as Attachment B.**

7. The first FOIA request to ICE was filed on June 22, 2021. The request included seven (7) subparts seeking all system records pertaining to Mr. Guzman Silvestre and all ICE correspondence with other government agencies, individuals, or attorneys pertaining to Mr. Guzman as well. The ICE FOIA Office did not acknowledge this request and assigned it tracking number 2022-ICFO-09447 subsequent to the filing of this complaint.

8. The second FOIA request to ICE was filed on March 10, 2022, and included seven (7) subparts seeking records involving ICE and Mr. Hoang from January 1, 1996, through the time of the filing. This request was acknowledged by the ICE FOIA Office on May 22, 2022, and assigned tracking number 2022-ICFO-08985.

9. The third FOIA request to ICE was filed on August 18, 2022, and included five (5) subparts seeking records relating to email and other records pertaining to Mr. Charpentier and all ICE correspondence with other government agencies, individuals, or attorneys pertaining to Mr. Charpentier as well. This request was acknowledged by the ICE FOIA Office on September 23, 2022, and assigned tracking number 2022-ICFO-27065.

10. On September 16, 2022, not having heard from ICE, Plaintiffs filed the Complaint for Declaratory and Injunctive Relief in the Northern District of Illinois.

## II.    ICE'S STANDARD PROCEDURE FOR INITIATING SEARCHES IN RESPONSE TO FOIA REQUESTS

11. When the ICE FOIA Office receives a FOIA request, the intake staff evaluates it to determine if it is a proper FOIA request per DHS FOIA regulation 6 C.F.R. § 5.3. Generally, a FOIA request is considered proper and in compliance with DHS regulations if it reasonably describes the records sought and the records are under the purview of ICE.

12. Proper FOIA requests are entered into a database known as Secure Release and assigned a case tracking number. Based upon the requestor's description of the records being sought and ICE FOIA's knowledge of the various program offices' missions, the ICE FOIA Office identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches.

13. ICE records are maintained by leadership offices and/or within ICE directorates, including but not limited to, the ICE FOIA Office, the Homeland Security Investigations (HSI), the Office of Enforcement and Removal Operations (ERO), the ICE FOIA Office, and the Office of the Principal Legal Advisor (OPLA). The program offices are typically staffed with a designated point of contact (POC) who is the primary person responsible for communications between that program office and the ICE FOIA Office. Each POC is a person with detailed knowledge about the operations of his/her respective program office.

14. Upon receipt of a proper FOIA request, the ICE FOIA Office will identify which program offices, based upon their experience and knowledge of ICE's program offices, within ICE are reasonably likely to possess records responsive to that request, if any, and task the relevant program offices with searches. Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs within each of those program offices with a copy of the FOIA request and instructs them to conduct a search for responsive records. The POCs then review the FOIA request, along with any case-specific instructions that may have been provided and based on their experience and knowledge of their program office practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. In conformity with the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files,

which in their judgment, based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn, provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness and the application of appropriate FOIA Exemptions.

15. ICE employees maintain records in several ways. ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records. ICE employees may store electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, and/or USB storage devices. The determination of whether or not these electronic locations must be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his/her files.

16. ICE employees use the Microsoft Outlook e-mail system. Each ICE employee stores his/her files in the way that works best for that particular employee. ICE employees use various methods to store their Microsoft Outlook e-mail files - some archive their files monthly, without separating by subject; others archive their e-mail by topic or by program; still others may create PST files of their emails and store them on their hard drive or shared drive.

17. Records received by the ICE FOIA Office from the program office POCs are assigned to a FOIA processor who determines whether or not the records are responsive to the FOIA request. If the records are responsive, the FOIA processor will redact information pursuant to the FOIA or Privacy Act, as appropriate, while simultaneously ensuring that all reasonably segregated non-exempt information is released.

18. Frequently, the ICE FOIA Office must coordinate between multiple program offices to ensure the program office records are properly redacted and information is correctly segregated. Once the ICE FOIA Office completes its coordination efforts and all responsive records have been processed, the ICE FOIA Office releases the responsive records to the requestor.

### III.   DESCRIPTION OF PROGRAM OFFICES TASKED WITH SEARCHING FOR RECORDS IN RESPONSE TO PLAINTIFFS' FOIA REQUESTS

19. ICE is the principal investigative arm of DHS and the second largest investigative agency in the federal government. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now employs more than 20,000 people in offices in every state and in 48 foreign countries.

20. After reviewing the FOIA requests, the ICE FOIA Office determined that because of the subject matter of Plaintiffs' FOIA Requests, OPLA, ERO, and HSI were the program offices likely to have responsive records (if such records existed). Therefore, based on their subject matter expertise and knowledge of the agency record systems, the ICE FOIA Office instructed these program offices to conduct a comprehensive search for records and to provide all potentially responsive records located during that search to the ICE FOIA Office for review and processing. Accordingly, and based on the information described below, all locations likely to contain records responsive to Plaintiffs' FOIA Requests (to the extent that they exist within ICE's custody) were searched.

21. ERO is responsible for arrest and removal of aliens, managing ICE detention operations and providing medical and mental health care to persons in ICE custody. HSI is the principal investigative arm of DHS, responsible for investigating transnational crime and threats, specifically those criminal organizations that exploit the global infrastructure through which international trade, travel and finance move. OPLA is the largest legal program in DHS, with more than 1,300 attorneys and nearly 300 support personnel with diverse backgrounds and perspectives. Pursuant to statute, OPLA serves as the exclusive representative of DHS in immigration removal proceedings before the Executive Office for Immigration Review, litigating all removal cases including those against criminal noncitizens, terrorists, and human rights abusers.

22. ERO oversees programs and conducts operations to identify and apprehend removable aliens, to detain these individuals when necessary, and to remove illegal aliens from the United States.  ERO prioritizes the apprehension, arrest, and removal of convicted criminals, those who pose a threat to national security, fugitives, recent border entrants, and aliens who thwart immigration controls.  ERO manages all logistical aspects of the removal process, including domestic transportation, detention, alternatives to detention programs, bond management, and supervised release.

23. When ERO receives a FOIA tasking from the ICE FOIA Office, the request is submitted to ERO's Information Disclosure Unit (IDU). A POC in IDU reviews the substance of the request and based on the subject matter expertise and knowledge of the program offices' activities within ERO, IDU determines whether it can search for records, or whether it is necessary to forward the FOIA request to specific individuals and component offices to conduct searches of their files systems which in their judgement, based on their knowledge of the manner in which they routinely keep records, would be reasonably likely to have responsive records, if any.

24. ERO's Field Operations Division (FOPS) provides guidance and coordination to ERO's national field offices and headquarters — managing programs and initiatives to identify, arrest, prosecute and remove priority noncitizens. FOPS provides guidance to, and coordination among, the 25 ERO Field Offices throughout the United States. Within ERO FOPS a FOIA POC reviews the substance of the request and based on their experience and knowledge of the office's practices and activities, tasks a specific office to conduct searches for records responsive to Plaintiff's requests.

25. ICE HSI is responsible for investigating a wide range of domestic and international activities arising from the illegal movement of people and goods into, within and out of the United States. HSI uses its legal authority to investigate criminal activities such as immigration crime; child exploitation; human rights violations and human smuggling; smuggling of narcotics, weapons and other types of contraband; and financial crimes, cybercrime and export enforcement issues. In addition to ICE criminal investigations, HSI oversees the agency's international affairs operations and law enforcement intelligence functions.

26. OPLA is the largest legal program in DHS, with over 1,100 attorneys and 350 support personnel. By statute, OPLA serves as the exclusive representative of DHS in immigration removal proceedings before the EOIR, litigating all removal cases including those against criminal aliens, terrorists, and human rights abusers. OPLA also provides a full range of legal services to ICE programs and offices. OPLA provides legal advice and prudential counsel to ICE personnel on their customs, criminal, and immigration law enforcement authorities, the FOIA and Privacy Act, ethics, legal liability under the Federal Tort Claims Act, and a range of administrative law issues, such as contract, fiscal, and employment law. OPLA represents the agency before the Merit Systems Protection Board, the Equal Employment Opportunity Commission, and the Board of

Contract Appeals. OPLA attorneys provide essential support to the DOJ in the prosecution of ICE cases and in the defense of ICE's authorities in federal court.

### A. MIGUEL GUZMAN SILVESTRE - 2022-ICFO-09447

#### ERO's Search in Response to Plaintiffs' FOIA Requests

27. In response to the FOIA tasking, the ERO FOIA POC reviewed the substance of the FOIA request and relying upon her subject matter expertise and knowledge of ERO's activities, determined that ERO Phoenix under the headquarters oversight of Field Operations should be tasked to conduct a search for responsive documents. Upon receipt of the FOIA tasking from the ICE FOIA Office, a Supervisory Detention and Deportation Officer conducted a search of databases using the subject's Alien Number ("A-Number"). They also conducted a search of their shared drive database using the terms "Miguel Silvestre," "Miguel Guzman Silvestre" and the subject's A-Number. An Assistant Field Office Director conducted a search of their shared drive database using the subject's A-Number. They further conducted a search of their shared drive database using the terms "Miguel" "Silvestre," "Guzman," and his A-Number. They also conducted a search of their sent and received emails using the terms "Silvestre," "Guzman," "Miguel" and his A-Number.

28. Four pages of potentially responsive records were located and sent to the ICE FOIA Office for review and processing.

#### HSI's Search in Response to Plaintiffs' FOIA Requests

29. Upon receipt of the FOIA request in this case and based on the nature of the Plaintiff's FOIA Request, a Management and Program Analyst within the HSI RDU conducted a search of the Investigative Case Management (ICM) system. ICM serves as the core law enforcement case management tool primarily used by HSI. ICM is used to manage immigration cases that are presented for criminal prosecution as well as to support its civil immigration enforcement cases.

30. The search terms used were the subject's alien number and "Miguel Silvestre."

31. There were no responsive records found.

#### OPLA's Search in Response to Plaintiffs' FOIA Requests

32. In response to the FOIA tasking, the OPLA FOIA POC reviewed the substance of the FOIA request and relying upon her subject matter expertise and knowledge of OPLA's activities, determined that ICE FOIA's Phoenix's Office of the Chief Counsel ("OCC") should be tasked to conduct a search for responsive documents.

33. The ICE FOIA Office tasked ICE OPLA's Phoenix OCC with a search for responsive records in connection with the plaintiff's FOIA request.

34. Thereafter, twenty-four (24) Assistant Chief Counsels conducted searches of their shared drive databases, using the terms "Miguel Silvestre," "Silvestre," "Silvestre Miguel," and his alien number. They further conducted searches of their shared drive databases using the terms "Guzman Silvestre," "Miguel, "Miguel Silvestre," "Miguel Silvestre [A-Number]," "Silvestre," "Silvestre, Manuel," and his alien Number. They also conducted searches of their sent and received emails using the terms "Guzman Silvestre," "Guzman-Silvestre," "Miguel Silvestre," "Miguel Silvestre [A-Number]," "Silvestre," "Silvestre, Miguel," his full alien number, and the last three digits of his alien number.

35. Of the twenty-four Assistant Chief Counsels, seven Assistant Chief Counsels conducted a search of the PLAnet system. PLAnet is OPLA's Case Management System and provides a repository for all ICE's attorneys' casework related to immigration and removal proceedings. ICE's more than 1,200 attorneys adjudicate and tracks hours in the PLAnet system for training and ancillary work completed.

36. The search included using the subject's full alien number, the last three digits of his alien number, "Silvestre," and "Miguel Silvestre."

37. One Assistant Chief Counsel conducted a search of the ENFORCE Alien Removal Module (EARM). EARM supports ICE's processing and removal of aliens from the United States.

38. The search included using the subject's full alien number.

39. A Senior Attorney conducted a search of their shared drive database using the terms "Miguel Silvestre," "Silvestre," and his alien number. They also conducted a search of their sent and received emails using the terms "Miguel Silvestre," "Silvestre," and his alien number.

40. Four Deputy Chief Counsels conducted a search of their shared drive database, using the terms "Silvestre," "Silvestre, Miguel," "Miguel Guzman Silvestre," "Miguel Silvestre," and his alien number. They further conducted a search of their shared drive database using the terms "Miguel," "Miguel Guzman Silvestre," "Miguel Silvestre," "Silvestre," "Silvestre, Miguel," and

his alien number. They also conducted a search of their sent and received emails using the terms "Miguel," "Miguel Guzman Silvestre," "Miguel Silvestre," "Silvestre," "Silvestre, Miguel," and his alien number.

41. Of the four Deputy Chief Counsels, two conducted a search of the PLAnet system, using the subject's name and alien number as search terms.

42. Three of the four Deputy Chief Counsels searched the ENFORCE Alien Removal Module (EARM).

43. One Deputy Chief Counsel conducted a search of RAILS[1]. RAILS is an automated file system that tracks internal immigrant files and receipt files and allows for certain DHS users to request immigration files.

44. Two legal assistants conducted a search of the PLAnet system, using the terms "Miguel Silvestre," "Silvestre, Miguel," and his A-Number. They further conducted a search of their shared drive database using the terms "Miguel Silvestre," "Silvestre, Miguel," and his alien number. They also conducted a search of their sent and received emails using the terms "Miguel Silvestre," "Silvestre, Miguel," and his alien number.

45. There were no responsive records found.

## B. **TOAN HOANG - 2022-ICFO-08985**

### **ERO's Search in Response to Plaintiffs' FOIA Requests**

46. In response to the FOIA tasking, the ERO FOIA POC reviewed the substance of the FOIA request and relying upon her subject matter expertise and knowledge of ERO's activities, determined that ERO Los Angeles and ERO San Fransisco should be tasked to conduct a search for responsive documents.

47. Upon receipt of the FOIA tasking, a Supervisory Detention and Deportation Officer (SDDO) from ERO Los Angeles searched EARM and RAILS, using the subject's alien number as the search term.

48. Upon receipt of the FOIA tasking, four SDDOs and two Deportation Officers from ERO San Francsisco conducted a search of their shared drive database using the terms "Hoang," "Hoang

---

[1] RAILS is not an acronym.

[A-Number]," "Hoang, Manh," "Hoang, Toan," "Hoang, Toan Manh," and his alien number. They also conducted a search of their sent and received emails using the terms "Hoang," "Hoang [A-Number]," "Hoang, Manh," "Hoang, Toan," and "Hoang, Toan Manh," and his alien number.

49. Further, four SDDOs and two Deportation Officers from ERO San Franscisco searched EARM and PLAnet, using the terms "Hoang," "Hoang [A-Number]," "Hoang, Manh," "Hoang, Toan," and "Hoang, Toan Manh," and his alien number.

50. Seven pages of potentially responsive records were located and sent to the ICE FOIA Office for review and processing.

### HSI's Search in Response to Plaintiffs' FOIA Requests

51. Upon receipt of the FOIA tasking from the ICE FOIA Office, an HSI Management and Program Analyst conducted a search of ICM using the terms "Toan Hoang" and his alien number.

52. There were no responsive records found.

### OPLA's Search in Response to Plaintiffs' FOIA Requests

53. In response to the FOIA tasking, the OPLA FOIA POC reviewed the substance of the FOIA request and relying upon her subject matter expertise and knowledge of OPLA's activities, determined that the Office of Chief Counsel in Los Angeles and Dallas should be tasked to conduct a search for responsive documents.

54. Therefore, one Deputy Chief Counsel from Los Angeles and one Acting Deputy Chief Counsel from Dallas searched PLAnet, using the terms "Tom Hoang," and his alien Number. They also conducted a search of their sent and received emails using the terms "Tom Hoang," and his alien Number.

55. Fifty-two pages of potentially responsive records were located and sent to the ICE FOIA Office for review and processing.

### C.  PASCAL CHARPENTIER - 2022-ICFO-27065

### ERO's Search in Response to Plaintiff's FOIA Requests

56. In response to the FOIA tasking, the ERO FOIA POC reviewed the substance of the FOIA request and relying upon her subject matter expertise and knowledge of ERO's activities, determined that ERO New York should be tasked to conduct a search for responsive documents.

57. Upon receipt of the FOIA tasking from the ICE FOIA Office, one Deportation Officer and one Assistant Field Office Director conducted a search of their shared drive database using the terms "Charpentier, Pascal," "Pascal Charpentier," and both of his alien number. They also conducted a search of their sent and received emails using the terms "Charpentier, Pascal," "Pascal Charpentier," and both of alien numbers.

58. Thirty-nine pages of potentially responsive records were located and sent to the ICE FOIA Office for review and processing.

### HSI's Search in Response to Plaintiffs' FOIA Requests

59. Upon receipt of the FOIA tasking from the ICE FOIA Office, an HSI Management and Program Analyst conducted a search of ICM using the terms "Pascal Charpentier," and both of his alien numbers.

60. There were no responsive records found.

### OPLA's Search in Response to Plaintiffs' FOIA Requests

61. In response to the FOIA tasking, the OPLA FOIA POC reviewed the substance of the FOIA request and relying upon her subject matter expertise and knowledge of OPLA's activities, determined that OCC New York should be tasked to conduct a search for responsive documents.

62. Therefore, eleven Assistant Chief Counsels conducted searches of their shared drive databases using the terms "Charpentier," "Pascal Charpentier," "Varick," both of his alien numbers, and the name of the subject's relative who is essential to the subject's claims of United Citizenship through derivation.  They also conducted a search of their sent and received emails using the terms "August 2020," "Birth Certificate," "Charpentier," "Pascal," "Pascal Charpentier," both of his alien numbers, a name of a relative, who is essential to the subject's claims of United Citizenship through derivation, and names of two Assistant Chief Counsels who were an integral part of the immigration proceedings.

63. Further, of the eleven Assistant Chief Counsels, four Assistant Chief Counsels searched PLAnet, using the terms "Charpentier," "Pascal Charpentier," and both of his alien numbers.

64. A Senior Attorney searched PLAnet and the Person Centric Query Service (PCQS), using both of his alien numbers as search terms. PCQS is a database that contains sensitive information about applicants for immigration benefits. PCQS pulls information from over 20 databases, including other DHS and federal agency databases. They also conducted a search of their sent and received emails using the terms "Charpentier," and "Pascal."

65. A Deputy Chief Counsel searched PLAnet, using an alien number as a search term. Further, they conducted a search of their shared drive database using the terms "Charpentier," "Pascal," and the last three of the subject's alien number. They also conducted a search of their sent and received emails using the terms "August 2020," "Birth Certificate," "Charpentier," and "Pascal."

66. The searches resulted in 13,601 pages of potentially responsive records that were sent to the ICE FOIA Office for review and processing.

## IV.    ORGANIZATION OF THE *VAUGHN* INDEX

67. Pursuant to the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), a *Vaughn* Index accompanies this declaration; the *Vaughn* Index provides a description of each redaction and the corresponding FOIA exemption being applied.

68. The *Vaughn* index is in a table format. The first column contains the bates number prefix for the records produced. The second column contains the bates stamp suffix (page numbers) of the responsive records. The third column describes the category of withholdings taken on the documents (full or partial). The fourth column describes the redaction codes, which are citations to the sections of the FOIA Exemptions. The fifth column describes the underlying records and provides justifications for the asserted exemptions.

69. The *Vaughn* index encompasses the responsive records produced by the program offices. ICE made nine (9) productions, totaling 2,802 pages. The records contained in these productions were subject to partial withholdings pursuant to FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), and

(b)(7)(E). For purposes of this Vaughn index, Plaintiff is only challenging the (b)(5) and (b)(7)(E) withholdings.

70. The 2,802 pages of records were released to Plaintiffs on a rolling basis. A complete description of these documents, and the bases for the withholdings of information in them, is detailed in ICE's Vaughn index. Generally, they include email communications between ICE employees regarding the subject's related immigration hearings, draft court filings, and other internal communications deliberating the proper litigation strategy.

### V. DESCRIPTION OF FOIA WITHHOLDINGS APPLIED TO RECORDS PROVIDED TO PLAINTIFFS

71. Exemption 5 of the FOIA allows the withholding of inter-agency or intra-agency records that are normally privileged in the civil discovery context. Pursuant to Exemption (b)(5), the three invoked privileges are the deliberative process privilege, the attorney-client privilege, and the attorney-work product privilege. ICE applied FOIA Exemption (b)(5) to protect from disclosure information subject to all three of these privileges, as applicable.

72. ICE withheld pre-decisional, deliberative internal discussions, deliberations, and recommendations between ICE employees regarding how to address certain litigation issues and strategy in preparation for litigation. The final responses were released to the Plaintiff, but the internal, pre-decisional and deliberative discussions prior to finalizing any responses were withheld.

73. The contents of these discussions and deliberations are pre-decisional in nature because they were prepared by employees within ICE to assist in making a final decision on how to respond to motions, the court, or other third-party inquiries.

74. The deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda, letters, or emails. Many of the documents withheld contain questions within the documents that are directed to government personnel. The internal discussions on the issue include various avenues the attorneys could explore in resolving the case, and the best routes in responding to opposing counsel in this matter.

75. The deliberations that are exhibited on the records are between ICE employees and these employees must be able to discuss proposed agency action freely. Release of the draft material would serve to profoundly chill the decision-making process across ICE because it would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel, and also ensure personnel would be less inclined to produce and circulate materials for the consideration and comment of their peers. Additionally, since these documents contain proposals for agency action, release of these documents may create confusion regarding what positions have actually been adopted by the agency. Should internal deliberations between ICE employees and officials be released to the public, this could cause a great likelihood of harassment and annoyance by members of the public. This could hinder ICE employees from conducting their official duties and could disrupt their private lives; could place them in danger as targets of law enforcement investigations and could minimize the ability to effectively conduct future investigations.

76. ICE also withheld portions of the documents as attorney-work product privileged information. These documents were drafted by OPLA OCC New York to prepare for the litigation of a specific immigration case, including oral arguments at relevant hearings. These work product notes are replicated from their internal database in furtherance of their duties as ICE attorneys.

77. Other documents withheld advise attorneys on how to prepare for immigration court hearings, what arguments to present to immigration court, what type of evidence to look for, and which lines of questioning to pursue. Disclosure of this information would significantly harm the integrity of the attorneys' preparation process and their ability to effectively represent ICE's interests during bond hearings.

78. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and the legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel. To effectively represent ICE and assist their clients, attorneys have to be able to discuss merits of legal arguments with total candor. Disclosure of this information would significantly harm the integrity of the attorney-client relationship and hinder the attorneys from being able to effectively represent the agency's best interests.

79. In each case, Plaintiffs have been provided with the final response and as such, obtaining the deliberative materials is unnecessary.

## FOIA Exemption 5 U.S.C. § 552(b)(7) Threshold

80. 5 U.S.C. § 552(b)(7) establishes a threshold requirement that, to withhold information on the basis of any of its subparts, the records or information must be compiled for law enforcement purposes. In this case, the relevant records consist of screenshots from ICE's law enforcement database, the EARM, showing the investigative status of immigration cases and internal database links to law enforcement databases, both of which are related to ICE's mission to enforce the immigration laws of the United States.

81. The information for which the ICE FOIA Office asserted Exemption (b)(7) satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act, codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. See 8 U.S.C. § 1103. ICE is the largest investigative arm of DHS and is responsible for identifying and eliminating vulnerabilities within the nation's borders. ICE is tasked with preventing any activities that threaten national security and public safety by investigating the people, money, and materials that support illegal enterprises. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now has more than 20,000 employees and offices in all 50 states and 48 foreign countries, and is responsible for enforcing the nation's immigration laws, and identifying and eliminating vulnerabilities within the nation's borders.

82. The records and information at issue in this matter pertain to ICE's obligation to enforce the immigration laws of the United States by investigating non-U.S. individuals who may be present in the United States illegally, as both EARM screenshots and internal URL links to ICE's law enforcement database are relied upon by ICE officers when discharging ICE's mission.   The records and information located in response to Plaintiffs' FOIA requests were collected and compiled by ICE law enforcement officers advancing ICE's law enforcement missions. Therefore, the records and information located in response to the FOIA requests were compiled for law enforcement purposes and meet the threshold requirement of FOIA Exemption 7.

**FOIA Exemptions 5 U.S.C. § 552(b)(6) & (7)(C)**

83. FOIA Exemption 6 allows the withholding of information found in "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) ("Exemption 6"). Records that apply to or describe a particular individual, including investigative records, qualify as "personnel," "medical" or "similar files" under Exemption 6. When applying this exemption to responsive documentation, the agency must balance the individual's personal privacy interest against the public need for the information.

84. FOIA Exemption 7(C) similarly protects from disclosure records or information "compiled for law enforcement purposes" if a release of the records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)").

85. When asserting Exemptions 6 and 7(C), ICE balances an individual's personal privacy interest against the public's interest in the disclosure of the information.

86. Here, ICE applied Exemption 6 in conjunction with Exemption 7(C) to protect from disclosure the names, contact information, including domain names and email addresses, photographs, office numbers, initials, social security numbers, signatures, and other personally identifiable information ("PII") of third-party individuals and ICE employees.

87. Such information, if disclosed to the public or to a third-party requester without the permission of the individual, could cause harm to the individual, expose the individual to identity theft and may reasonably lead to unwanted contact from persons that might seek to harm the individual.

88. Additionally, ICE employees have received an increase in threats, intimidation, and personal attacks in recent years due to the nature of their work. Publicly disclosing employees' PII could subject ICE employees to harassment or harm. Additionally, the release of the email addresses, which are not publicized, could expose employees to an increase of cyber threats.

89. As to that information specific to ICE employees, the privacy consideration at issue is the interest of each of these individuals in remaining free from harassment, intimidation, doxing and annoyance in conducting their official duties in the future, their interest in remaining free from harassment, intimidation, doxing and annoyance in their private lives, and their interest in not being targeted by individuals in the future who may begrudge them. In recognition of the above-

described strong privacy interest of all ICE employees, on June 11, 2020, the Office of Personnel Management ("OPM") approved ICE's request to be designated as a "security/sensitive" agency for FOIA purposes, which ensures that OPM would, henceforth, withhold all personally identifying information pertaining to ICE employees.

90. Furthermore, third party individuals have a recognized privacy interest in not being publicly associated with law enforcement investigations through the release of records compiled for law enforcement purposes. The identities of persons named in law enforcement files (whether or not the named individual is the target of investigations or law enforcement actions) are properly withheld under Exemptions 6 and 7(C) in recognition of the stigmatizing connotation carried by the mere mention of individuals in law enforcement files. The individuals' privacy interest in the information contained in the record outweighs any minimal public interest in the disclosure of the information. Plaintiffs have not articulated a sufficient public interest or public need to justify release of this information. The disclosure of this PII serves no public benefit and would not assist the public in understanding how ICE is carrying out its statutory responsibilities. Additionally, the third parties identified in the records have not consented to the disclosure of their PII.

91. ICE determined that the disclosure of the information described above would constitute a clearly unwarranted invasion of personal privacy and thus Exemption 6 applied. In addition, ICE determined that disclosure of this information, which was compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy, and thus Exemption 7(C) applied.

92. Having determined that the individuals identified in the responsive records have a cognizable privacy interest in not having their information released, ICE FOIA then balanced the interest in safeguarding the individuals' privacy from unnecessary public scrutiny against the public's interest in understanding how ICE performs its statutory duties. Exemptions 6 and 7(C) were applied to prevent disclosure of third-party individuals' identities and PII as well as the identities of ICE personnel. In each instance where Exemptions 6 and 7(C) were applied, the redaction was limited to the name of the individual and all other personally identifiable information, which if released, would not shed any further light as to the operations or activities of ICE. In some redactions, the information surrounding the redactions was released and the limited extent of the redaction is readily apparent from the context of the records.

93. Based upon the traditional recognition of strong privacy interests in law enforcement records, the categorical withholding of third-party information identified in law enforcement records is appropriate. Moreover, the third parties identified in these records have not provided consent to the release of their personally identifiable information.

### FOIA Exemptions 5 U.S.C. § 552(b)(7)(E)

94. FOIA Exemption 7(E) affords protection to law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

95. Here ICE has applied Exemption 7(E) to law enforcement sensitive information, specifically intranet URLs and law enforcement codes contained in screenshots of databases.

96. This type of information is utilized for law enforcement purposes as it is in furtherance of ICE's obligation to enforce the immigration laws of the United States by conducting removal operations and ensuring that these operations are not hindered by actions of bad actors who may obtain access to confidential law enforcement sensitive information and intelligence.

97. Disclosure of internal codes and intranet URLs could assist unauthorized parties in deciphering the meaning of the codes, aid in gaining improper access to law enforcement databases, and assist in the unauthorized party's navigation of the law enforcement databases. Disclosure of these techniques and practices for navigating the databases could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken during law enforcement investigations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities and would sacrifice the safety of both ICE employees and the public at large.

98. The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory duties.

### VI. SEGREGABILITY

99. 5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

100.    A line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

101.    With respect to the records that were released, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released. ICE did not withhold any non-exempt information on the grounds that it was non-segregable.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.

Signed this _____ day of April 2024.

FERNANDO PINEIRO JR

Digitally signed by FERNANDO PINEIRO JR
Date: 2024.04.30 13:23:53 -04'00'

Fernando Pineiro, FOIA Director
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009

# Attachment A

**Stevens v. DHS et al.**
No. 22-cv-05072 (N.D.Ill., filed 11.10.22)

U.S. Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 2023-ICLI-00003, 3 | Partial | **Document Title**: Law Enforcement database webpage<br><br>**Document Description**: Web view of an ICE online database.<br><br>**Redacted Information:** Case numbers, Person ID codes, and ERO internal site address.<br><br>**Reason(s) for Redactions:** Exemption 7(E) affords protection to all law enforcement information that would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. The information withheld on these pages protects the release of URLs which are unique addresses for files accessible on the Internet and could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure could assist third parties in deciphering the meanings of the codes and could allow an individual to navigate, alter or manipulate a law enforcement internal site if they were to gain access to the site. Disclosure of these techniques and practices in navigating an internal site could permit people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. How law enforcement officers access and use internal sites is a law enforcement technique and procedure that is not commonly known. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.<br><br>Disclosure of internal codes such as Case and ID numbers could assist unauthorized parties in deciphering the meaning of the codes, aid in gaining improper access to law enforcement databases, and assist in the unauthorized party's navigation of the law enforcement databases. | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

Case: 25-1126 Document: 9 Filed: 03/10/2025 Pages: 94

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | Disclosure of these techniques and practices for navigating the databases could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ERO during removal operations.  In addition, the disclosure of law enforcement sensitive techniques, procedures, systems, undercover agent activities, staffing/resource allocation, or investigatory steps taken during a criminal investigation, could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.  Further, how immigration officers conduct investigations, work with undercover agents, or allocate resources, are all law enforcement techniques and procedures that are not commonly known.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 2023-ICLI-00003, 9 | Partial | **Document Title**: Law Enforcement Database Webpage

**Document Description**: Web view of an ICE online database.

**Redacted Information:** Case numbers and Person ID.

**Reason(s) for Redactions:** Exemption 7(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Disclosure of internal codes such as Case and ID numbers could assist unauthorized parties in deciphering the meaning of the codes, aid in gaining improper access to law enforcement databases, and assist in the unauthorized party's navigation of the law enforcement databases.  Disclosure of these techniques and practices for navigating the databases could permit people seeking to violate or circumvent the law to take proactive steps to counter | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | operational and investigative actions taken by ERO during removal operations.  In addition, the disclosure of law enforcement sensitive techniques, procedures, systems, undercover agent activities, staffing/resource allocation, or investigatory steps taken during a criminal investigation, could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.  Further, how immigration officers conduct investigations, work with undercover agents, or allocate resources, are all law enforcement techniques and procedures that are not commonly known.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 2023-ICLI-00003, 12-17 | Partial | **Document Title**: MEMO TO FILE<br><br>**Document Description**: Statement of the case for Toan Manh Hoang's claim to United States Citizenship<br><br>**Redacted Information**: Names of third-party identifiable information bottom of bates page 13 under the last bullet point and on the footnote on the bottom of page 13 and top portion of 14 under "Parents' Names, Dates and Places of Birth and Death, Citizenship and Immigration Status," and "Parents' Marital Status." and also top portion of bates 17. Suite #,<br><br>**Reason(s) for Redactions**:<br><br>The disclosure of the suite number could reasonably be expected to constitute an unwarranted invasion of personal privacy by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; could place them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek | Freedom of Information Act 5 U.S.C. § 552 (b)(6) and (b)(7)(C) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | revenge; and disclosure could minimize the ability to effectively conduct future investigations. ICE has been designated as a Security/Sensitive Agency under the U.S. Office of Personnel Management's official Data Release Policy, recognizing that ICE employees are subject to heightened risk of harassment or attack by virtue of their employment with ICE. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. The disclosure of the names of third-parties could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. The disclosure of third-party PII could reasonably be expected to constitute an unwarranted invasion of individuals' personal privacy interests in not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the | |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2023-ICLI-00003, 23 | Partial | **Document Title**: Webview printout dated: 10/25/22, 3:40PM<br><br>**Document Description**: Web view of an ICE online database.<br><br>**Redacted Information:** ERO internal site address.<br><br>**Reason(s) for Redactions:** Exemption 7(E) affords protection to all law enforcement information that would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. The information withheld on these pages protects the release of URLs which are unique addresses for files accessible on the Internet and could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure could assist third parties in deciphering the meanings of the codes and could allow an individual to navigate, alter or manipulate a law enforcement internal site if they were to gain access to the site. Disclosure of these techniques and practices in navigating an internal site could permit people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. How law enforcement officers access and use internal sites is a law enforcement technique and procedure that is not commonly known. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 2023-ICLI-00003, 53-54 | Full | **Document Title**: Third-party naturalization certificate<br><br>**Document Description**: Naturalization Certificate for a third party relative<br><br>**Redacted Information**: All referenced pages, which contain third party PII, were redacted.<br><br>**Reason(s) for Redactions**:  The disclosure of third-party PII could reasonably be expected to constitute an unwarranted invasion of individuals' personal privacy interests in not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, third parties identified in the records have not consented to the disclosure of their PII.<br><br>**Upon further consideration, ICE has decided to re-process and segregate the withholdings.** | Freedom of Information Act 5 U.S.C. § 552 (b)(6) and (b)(7)(C) |
| 2023-ICLI-00003, 56 | Partial | **Document Title**: Details For TOAN MANH HOANG<br><br>**Document Description**: Web view of a government database<br><br>**Redacted Information:** Law enforcement codes, FBI number, and ERO internal site address.<br><br>**Reason(s) for Redactions:**  Exemption 7(E) affords protection to all law enforcement information that would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | could reasonably be expected to risk circumvention of the law. The information withheld on these pages protects the release of URLs which are unique addresses for files accessible on the Internet and could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.  Disclosure could assist third parties in deciphering the meanings of the codes and could allow an individual to navigate, alter or manipulate a law enforcement internal site if they were to gain access to the site.  Disclosure of these techniques and practices in navigating an internal site could permit people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.  How law enforcement officers access and use internal sites is a law enforcement technique and procedure that is not commonly known.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.<br><br>Disclosure of internal codes such as Law Enforcement Codes and FBI numbers could assist unauthorized parties in deciphering the meaning of the codes, aid in gaining improper access to law enforcement databases, and assist in the unauthorized party's navigation of the law enforcement databases.  Disclosure of these techniques and practices for navigating the databases could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ERO during criminal investigations.  In addition, the disclosure of law enforcement sensitive techniques, procedures, systems, undercover agent activities, staffing/resource allocation, or investigatory steps taken during a criminal investigation, could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be | |

Case: 25-1126      Document: 9      Filed: 03/10/2025      Pages: 94

| Bates Stamp Page # | Withhold ing: Full/Parti al | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | expected to risk circumvention of the law. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 2023-ICLI-00003, 91 | Partial | **Document Title**: Email titled "FW: Translation request status French Birth Cert" **Document Description**: An email correspondence between three ICE attorneys discussing how recognition of a father could change a US citizen derivation analysis. **Redacted Information:** Partial redactions pursuant to FOIA Exemption (b)(5) were made to withhold deliberative information and attorney work product. **Reason(s) for Redactions:** The information is properly withheld as deliberative material per (b)(5), which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. These materials do not reflect final agency actions or policy; instead, they are a reflection of the issues the author has determined to be, in their judgement, worthy of discussion or consideration by colleagues or superiors and their release would only serve to confuse the public. Specifically, within the email chain, an ICE attorney is communicating new information to other ICE attorneys requesting input as to whether recognition of the father could be change the US citizen derivation analysis, thereby providing eligibility for relief from removal. The communications are an attempt to finalize a position for the matter. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications thereby | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

Case: 25-1126    Document: 9    Filed: 03/10/2025    Pages: 94

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | adversely impacting the quality of internal policy decisions and, consequently, the development of ICE agency positions.<br><br>The email exchange is also protected as attorney work product created in preparation for litigation. The attorney work-product privilege serves to protect the adversarial process by insulating the attorney's preparation from scrutiny and protects facts from disclosure. The email between ICE attorneys, seeking to determine whether factual information gathered affects the likelihood of the subject obtaining relief from removal, and signals the intent to determine the best way ICE could proceed during litigation. In this email, an assistant chief counsel from the New York field office is discussing whether this information provides any deviation from the litigation strategy being pursued thus far. To effectively litigate immigration cases in furtherance of ICE's mission, attorneys and supervisors have to be able to discuss merits or demerits of legal arguments with total candor. Disclosure of this information would significantly harm the integrity of the attorneys' preparation process and their ability to effectively represent ICE's interests during immigration hearings. Further, the identifiable and foreseeable harm that would be caused by disclosure of these records would inhibit the candid discussion of issues between employees, which would hinder the ability of ICE attorneys to be fully informed concerning the agency's liability and to make quality decisions about such issues as well as assess any future litigation risks. | |
| 2023-ICLI-00003, 378 | Partial | **Document Title**: Document 1<br><br>**Document Description**: Final page of a court filing dated September 14, 2020.<br><br>**Redacted Information**: Upon further consideration, ICE no longer claims the (b)(5) exemption as to this information and instead claims exemptions (b)(6) and (b)(7)(C). | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 2023-ICLI-00003, 388 | Partial | **Document Title**: Email titled "Notification of Social Media Posts Naming OPLA NYC Employees" <br><br> **Document Description**: An email correspondence between supervisory ICE attorneys and the Joint Intelligence Operations Center (JIOC). The ICE attorneys are notifying JIOC of a potential threat to two OPLA NYC attorneys, whose names were posted on social media multiple times, accusing them of withholding information meant to go to the subject and demanding he be released from detention. The email describes the accusations against the attorneys and advises the JIOC that one of the attorneys received direct emails to her DHS email account from members of the public. <br><br> **Redacted Information:** The email on the center of page 388. <br><br> **Reason(s) for Redactions:** Upon further consideration, ICE no longer claims the (b)(5) exemption as to the email on bates page 388 and instead claims exemption (b)(7)(E). Exemption 7(E) affords protection to all law enforcement information that would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. The information withheld on these pages protects the release of a request for assistance from the Joint Intelligence Operations Center (JIOC) and could reveal techniques and/or procedures for law enforcement investigations or prosecutions or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure could assist third parties in deciphering the meanings of the guidelines and/or processes involved in reporting and could allow bad actors to navigate behavior to circumvent the law. Disclosure of these techniques and practices in what would go into internal reporting of threatening behavior could permit people seeking to violate or | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.  How the JOIC assesses reports and handle potential threats to ICE employees a law enforcement technique and procedure that is not commonly known.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 2023-ICLI-00003, 393 | Partial | **Document Title**: Emails titled "FW: Pascal Shakoure Charpentier," and "Pascal Shakour Charpentier"<br><br>**Document Description**: An email from a third-party to an ICE employee in support of Pascal Shakour Charpentier, which was subsequently forwarded to another ICE Employee.<br><br>**Redacted Information**: Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were made to redact the names, phone numbers and email addresses of ICE employees next to the "From," "To," and "Cc" fields, within the e-mail, and at the signature block at the bottom of the e-mails, on page 20.  Further partial redactions were made next to the "From," "To," and "Cc" fields and on the salutation following "Dear Ms." towards the bottom of page 20 on the email from a third party to the ICE Employee.<br><br>**Reason(s) for Redactions**:   FOIA Exemption (b)(6) and (b)(7)(C): disclosure of the email addresses, names, and phone numbers of ICE employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; could place them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and disclosure could minimize the ability to effectively conduct future investigations. ICE has been designated as a Security/Sensitive Agency under the | Freedom of Information Act 5 U.S.C. § 552 (b)(6) and (b)(7)(C) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | U.S. Office of Personnel Management's official Data Release Policy, recognizing that ICE employees are subject to heightened risk of harassment or attack by virtue of their employment with ICE. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names of third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy interests in: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Further, disclosure of such information would not shed light on ICE operations and activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Finally, third parties identified in the records have not consented to the disclosure of their PII. | |
| 2023-ICLI-00003, 406-414 | Partial | **Document Title**: Standard Operating Procedure for Employees to Report Attorney Violation of State Bar Professional Conduct Rules | Freedom of Information |

Stevens v. DHS et al. - *Vaughn* Index (April 2024)

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **Document Description**: Standard Operating Procedure for Employees to Report Attorney Violation of State Bar Professional Conduct Rules<br><br>**Redacted Information:** Upon further consideration, ICE no longer claims the b(5) exemption as to this information and can release the previously withheld materials. | Act 5 U.S.C. § 552 (b)(5) |
| 2023-ICLI-00003, 443-448 | Full | **Document Title**: FOIA request response from USCIS and the FOIA release<br><br>**Document Description**: Full redactions were made pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) for a FOIA response letter located on pages 443-445. The response is located immediately after on pages 446-448<br><br>**Redacted Information**: The entire FOIA request and response were redacted.<br><br>**Reason(s) for Redactions**:   Upon further consideration, ICE has decided to re-process and segregate the withholdings pursuant to FOIA exemptions (b)(6) and (b)(7)(C). | Freedom of Information Act 5 U.S.C. § 552 (b)(6) and (b)(7)(C) |
| 2023-ICLI-00003, 619-623, 632, 634, 642-644 | Partial | **Document Title**: Email Titled "RE: Pascal Charpentier RELEASED FROM DETENTION"<br><br>**Document Description**: An email communication between three ICE attorneys discussing litigation strategy in advance of a scheduled hearing date.<br><br>**Redacted Information:** Partial redactions pursuant to FOIA Exemption (b)(5) were made to withhold deliberative information and attorney work-product on the center and bottom of page 621 and top of page 622, the bottom of page 632.<br><br>**Reason(s) for Redactions:**  The information is properly withheld as deliberative material per (b)(5), which protects the integrity of the deliberative or decision-making processes within the | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| Bates Stamp Page # | Withhold ing: Full/Parti al | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. These materials do not reflect final agency actions or policy; instead, they are a reflection of the issues the author has determined to be, in their judgement, worthy of discussion or consideration by colleagues or superiors and their release would only serve to confuse the public. Specifically, within the email chain, ICE attorneys are discussing case strategy. The communications are an attempt to finalize a position on whether a change of venue would be the best strategy to take. The attorneys are deliberating how proactive DHS should be in this proceeding, while balancing a risk of a major delay in the court proceedings should one route be taken over the other, or, in the alternative, to allow the immigration judge to determine the detainee's citizenship issue first. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications thereby adversely impacting the quality of internal policy decisions and, consequently, the development of ICE agency positions.

The email exchange is also protected as attorney work product created in preparation for litigation. The attorney work-product privilege serves to protect the adversarial process by insulating the attorney's preparation from scrutiny and protects facts from disclosure. The email between ICE attorneys, seeking to finalize whether to first address a citizenship claim position in an immigration case or file a motion regarding venue signals the intent to further litigate the case by the sender, thus triggering an analysis of determining the proper strategy ICE should use to proceed in litigation. In this email, an assistant chief counsel is offering suggestions and input as to which possible scenario to pursue during litigation. The identifiable and foreseeable harm that would be caused by disclosure of these records would inhibit the candid discussion of issues between attorneys, which would hinder the ability of ICE attorneys to be fully informed | |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | concerning the agency's liability and to make quality decisions about such issues as well as assess any future litigation risks.<br><br>Upon further consideration, ICE no longer claims the (b)(5) exemption as to the lower-center right of page 622, the top-left of page 632, the top-right of page 634, and the top of 642 in the body of the email, but instead is claiming Exemption (b)(6) and (b)(7)(C). | |
| 2023-ICLI-00003, 647 | Partial | **Document Title**: Email Titled "Pascal Charpentier next hearing Jan 12, 2021 detained IJ Conroy"<br><br>**Document Description**: An email communication between an ICE attorney and a deportation officer discussing case preparation related to an impending litigation.<br><br>**Redacted Information:** Please note ICE is no longer claiming Exemption (b)(5) at the top of Bates 647. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |
| 2023-ICLI-00003, 722 | Partial | **Document Title**: Email Titled "Pascal Charpentier hearing today A[redacted]"<br><br>**Document Description**: An email communication between ICE attorneys and a DOJ attorney discussing the progress in a particular case and providing a summary of a recent hearing before an immigration judge.<br><br>**Redacted Information:** Partial redactions pursuant to FOIA Exemption (b)(5) were made to withhold deliberative information and attorney work-product.<br><br>**Reason(s) for Redactions:** The information is properly withheld as deliberative material per (b)(5), which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. These materials do not reflect | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

Case: 25-1126     Document: 9     Filed: 03/10/2025     Pages: 94

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | final agency actions or policy; instead, they are a reflection of the issues the author has determined to be, in their judgement, worthy of discussion or consideration by colleagues or superiors and their release would only serve to confuse the public. Specifically, within the email chain, ICE attorneys are discussing case strategy and internal communications regarding the conduct of private counsel at the hearing. The email further discusses new claims being made by private counsel alleging DHS's failure to provide records in response to counsel's request. The communications are an attempt to decide how to proceed regarding the new claims being made against the Department. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications thereby adversely impacting the quality of internal policy decisions and, consequently, the development of ICE agency positions.<br><br>The email exchange is also protected as attorney work product created in preparation for litigation. The attorney work-product privilege serves to protect the adversarial process by insulating the attorney's preparation from scrutiny and protects facts from disclosure. The email between ICE attorneys, discussing case strategy and internal communications regarding the conduct of private counsel at the hearing. The email further discusses new claims being made by private counsel alleging DHS's failure to provide records in response to counsel's request. The communications are an attempt to decide how to proceed regarding the new claims being made against the Department. The disclosure of the email exchange deliberating the appropriate course of action to take in an immigration case between an attorney and a supervisor would chill the free and frank exchange of ideas that form the backbone of effective decision-making when it comes to selecting the most effective strategy to pursue in litigating immigration cases on behalf of ICE. To effectively litigate immigration cases in furtherance of ICE's mission, attorneys and supervisors | |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | have to be able to discuss merits or demerits of legal arguments with total candor. Disclosure of this information would significantly harm the integrity of the attorneys' preparation process and their ability to effectively represent ICE's interests during immigration hearings. Further, the identifiable and foreseeable harm that would be caused by disclosure of these records would inhibit the candid discussion of issues between employees, which would hinder the ability of ICE attorneys to be fully informed concerning the agency's liability and to make quality decisions about such issues as well as assess any future litigation risks. | |
| 2023-ICLI-00003, 734 | Partial | **Document Title**: Portion of an email conversation<br><br>**Document Description**: An email communication between a Deputy Chief Counsel and a line attorney discussing the priority designation for Mr. Charpentier, including arguments that can be made in support of the designation as well as supporting case law, and information regarding a pending filing.<br><br>**Redacted Information:** Partial redactions pursuant to FOIA Exemption (b)(5) were made to withhold deliberative information and attorney work-product.<br><br>**Reason(s) for Redactions:** The information is properly withheld as deliberative material per (b)(5), which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. These materials do not reflect final agency actions or policy; instead, they are a reflection of the issues the author has determined to be, in their judgement, worthy of discussion or consideration by colleagues or superiors and their release would only serve to confuse the public. Specifically, within the email chain, the | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | Deputy Chief Counsel is advising the line attorney on edits that were made to her 'event note' in an online database discussing the priority designation for Charpentier. The attorneys are discussing work product notes on the matter, including potential arguments that could be made on ICE's behalf concerning removal of the subject. The communications consist of a summary of the case, and provide insight as to arguments that could be made, information on documents that will soon be filed, and who the attorneys need to discuss this with, prior to filing said documents. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications thereby adversely impacting the quality of internal policy decisions and, consequently, the development of ICE agency positions. The email exchange is also protected as attorney work product created in preparation for litigation. The attorney work-product privilege serves to protect the adversarial process by insulating the attorney's preparation from scrutiny and protects facts from disclosure. The email between ICE attorneys, copying work product notes on the matter from an internal case-note management system, includes arguments that should be made and signals the intent to further litigate the case by the sender. In this email, an ACC is discussing the case history and offers litigation strategy to pursue in anticipation of imminent litigation. To effectively litigate immigration cases in furtherance of ICE's mission, attorneys and supervisors have to be able to discuss merits or demerits of legal arguments with total candor. Disclosure of this information would significantly harm the integrity of the attorneys' preparation process and their ability to effectively represent ICE's interests during immigration hearings. Further, the identifiable and foreseeable harm that would be caused by disclosure of these records would inhibit the candid discussion of issues between employees, which would hinder the ability of ICE attorneys to be fully informed | |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | concerning the agency's liability and to make quality decisions about such issues as well as assess any future litigation risks. | |
| 2023-ICLI-00003, 752 | Partial | **Document Title**: Portion of an email conversation, entitled "Priority Designation Determinations and PLAnet Tracking Guidance," beginning on page 751.<br><br>**Document Description**: An email communication between a Chief Counsel and all attorneys in the New York field office, which provides internal guidance on how to make priority designation determinations and how to track those determinations in ICE's internal case management database.<br><br>**Redacted Information:** Partial redactions pursuant to FOIA Exemption (b)(5) were made to withhold deliberative information and attorney work-product.<br><br>**Reason(s) for Redactions:** The information is properly withheld as deliberative material per (b)(5), which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. These materials do not reflect final agency actions or policy; instead, they are a reflection of the issues the author has determined to be, in their judgement, worthy of discussion or consideration by colleagues or superiors and their release would only serve to confuse the public. Specifically, within the email chain, ICE attorneys are discussing how to designate files as a priority in an ICE database, and where to find instructions on how to seek approval from superiors when required. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | intra- and inter-agency communications thereby adversely impacting the quality of internal policy decisions and, consequently, the development of ICE agency positions.<br><br>The email exchange is also protected as attorney work product created in preparation for litigation. The attorney work-product privilege serves to protect the adversarial process by insulating the attorney's preparation from scrutiny and protects facts from disclosure. Specifically, within the email chain, ICE attorneys are discussing how to designate files as a priority in an ICE database, and where to find instructions on how to seek approval from superiors when required.  To effectively litigate immigration cases in furtherance of ICE's mission, attorneys and supervisors have to be able to discuss merits or demerits of legal arguments with total candor. Disclosure of this information would significantly harm the integrity of the attorneys' preparation process and their ability to effectively represent ICE's interests during immigration hearings. Further, the identifiable and foreseeable harm that would be caused by disclosure of these records would inhibit the candid discussion of issues between employees, which would hinder the ability of ICE attorneys to be fully informed concerning the agency's liability and to make quality decisions about such issues as well as assess any future litigation risks.<br><br>**Upon further consideration, ICE has released the name of the Chief Counsel previously withheld under Exemptions (b)(6) and (b)(7)(C) on pages 752, and no longer claims the (b)(5) exemption as to the last paragraph in the email on page 752, beginning with "This message includes internal guidance…"** | |
| 2023-ICLI-00003, 776 | Partial | **Document Title**: Printout of Twitter Thread<br><br>**Document Description**: Printout of Twitter Thread from "@NewSanctuaryNYC" | Freedom of Information |

Case: 25-1126 Document: 9 Filed: 03/10/2025 Pages: 94

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **Redacted Information:** ICE is no longer claiming Exemption (b)(5) at the top bates pages 642 and instead is claiming Exemption (b)(6) and (b)(7)(C). | Act 5 U.S.C. § 552 (b)(5) |
| 2023-ICLI-00003, 968 | Partial | **Document Title**: Email Titled "Pending civil suit in SDNY regarding Pascal Charpentier [redacted] case 1:20-cv-07510 and game plan for merits 9/17/20 at 1pm"<br><br>**Document Description**: An email communication from an ICE Assistant Chief Counsel (ACC) to other ACCs and a Deputy Chief Counsel for ICE discussing her proposed litigation strategy for a detained immigration hearing on the following day.<br><br>**Redacted Information:** Partial redactions pursuant to FOIA Exemption (b)(5) were made to withhold deliberative information and attorney work-product.<br><br>**Reason(s) for Redactions:** The information is properly withheld as deliberative material per (b)(5), which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. These materials do not reflect final agency actions or policy; instead, they are a reflection of the issues the author has determined to be, in their judgement, worthy of discussion or consideration by colleagues or superiors and their release would only serve to confuse the public. Specifically, within the email chain, an ICE attorney has prepared a case update, provided opinions, and is seeking recommendations on strategy described within the email for an upcoming hearing. The communications are in preparation for a scheduled court hearing. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter- | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

Case: 25-1126 Document: 9 Filed: 03/10/2025 Pages: 94

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | agency communications thereby adversely impacting the quality of internal policy decisions and, consequently, the development of ICE agency positions.<br><br>The email exchange is also protected as attorney work product created in preparation for litigation. The attorney work-product privilege serves to protect the adversarial process by insulating the attorney's preparation from scrutiny and protects facts from disclosure. In this email, the ACC is providing an update to the current litigation and opinions as to the proper way the attorney believes she should proceed and the reasons why. This signals the intent to further litigate the case by the ACC. The email further seeks advice from the ACCs and the Deputy Chief Counsel on the pending issues to be addressed, including concerns regarding a civil complaint recently filed by the respondent. The disclosure of the email exchange deliberating the appropriate course of action to take in an immigration case between an attorney and a supervisor would chill the free and frank exchange of ideas that form the backbone of effective decision-making when it comes to selecting the most effective strategy to pursue in litigating immigration cases on behalf of ICE. To effectively litigate immigration cases in furtherance of ICE's mission, attorneys and supervisors have to be able to discuss merits or demerits of legal arguments with total candor. Disclosure of this information would significantly harm the integrity of the attorneys' preparation process and their ability to effectively represent ICE's interests during immigration hearings. Further, the identifiable and foreseeable harm that would be caused by disclosure of these records would inhibit the candid discussion of issues between employees, which would hinder the ability of ICE attorneys to be fully informed concerning the agency's liability and to make quality decisions about such issues as well as assess any future litigation risks. | |
| 2023-ICLI-00003, | Full | **Document Title**: Third-party report of transfer or discharge from the Armed Forces of the United States. | Freedom of Information Act 5 U.S.C. |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 1011-1015 | | **Document Description**: This information on these pages includes a Report of Transfer or Discharge from the Armed Forces of the United States, a Certificate of Training from the Air Force, and a copy of a third-party permanent resident card.<br><br>**Redacted Information**: All referenced pages, which contain third party PII, were redacted.<br><br>**Reason(s) for Redactions**: The disclosure of third-party PII could reasonably be expected to constitute an unwarranted invasion of individuals' personal privacy interests in not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, third parties identified in the records have not consented to the disclosure of their PII.<br><br>Upon further consideration, ICE has decided to re-process and segregate the withholdings. | § 552 (b)(6)(b)(7)(C) |
| 2023-ICLI-00003, 1052-1065 | Full | **Document Title**: DHS's Draft Motion In Opposition to Respondent's Motion to Terminate<br><br>**Document Description**: A draft motion authored by an ICE attorney in contemplation of an upcoming court date.<br><br>**Redacted Information:** Redactions pursuant to FOIA Exemption (b)(5) were made to withhold deliberative information in a draft document and attorney work-product. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

Stevens v. DHS et al. - *Vaughn* Index (April 2024)

Case: 25-1126 Document: 9 Filed: 03/10/2025 Pages: 94

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **Reason(s) for Redactions:** The information is properly withheld as deliberative draft document per (b)(5), which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters.. Specifically, the document is a draft motion authored by the ICE attorney. The draft motion contains comments by other ICE attorneys and questions regarding the legal adequacy of arguments made in the motion. The email that the motion is attached to explains that the author is seeking clarity on specific arguments. | |

This is a draft and not a final document. Draft documents, by their nature, are pre-decisional and preliminary versions of what may later become a final document in whole or in part. Oftentimes draft documents never evolve into a final form; material is withdrawn or discarded during the decision-making process. It is also possible that the process by which a draft evolves into a final document, in and of itself, can be considered deliberative. Release of the draft material would serve to profoundly chill the decision-making process across ICE because it would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel and ensure personnel would be less inclined to produce and circulate materials for the consideration and comment of their peers. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications thereby adversely impacting the quality of internal policy decisions and, consequently, the development of ICE agency positions.

The draft motion is also protected as attorney work product created in preparation for litigation. The attorney work-product privilege serves to protect the adversarial process by insulating the attorney's preparation from scrutiny and protects facts from disclosure. The information redacted consists of a draft motion, with suggested clarifications and red-lined edits, sent to colleagues for

Case: 25-1126 Document: 9 Filed: 03/10/2025 Pages: 94

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | review and recommendations.  Here, the information redacted consists of a guidance on the DHS implementation of the Secretary's exercise of his exemption authority under section 212(d)(3)(B)(i) of the INA, in particular OPLA's role in litigating cases in immigration court that involves grounds of inadmissibility or bars to relief/protection that may be eligible for an exemption. The disclosure of the information in this draft motion would chill the free and frank exchange of ideas that form the backbone of effective decision-making when it comes to selecting the most effective strategy to pursue in litigating immigration cases on behalf of ICE. To effectively litigate immigration cases in furtherance of ICE's mission, attorneys must be able to discuss merits or demerits of legal arguments and legal strategy with total candor. Disclosure of this information would significantly harm the integrity of the attorneys' preparation process and their ability to effectively represent ICE's interests during immigration hearings. Further, the identifiable and foreseeable harm that would be caused by disclosure of these records would inhibit the candid discussion of issues between employees, which would hinder the ability of ICE attorneys to be fully informed concerning the agency's ability and to make quality decisions about such issues as well as assess any future litigation risks. | |
| 2023-ICLI-00003, 1072 | Partial | **Document Title**: DHS Motion Cover Sheet<br><br>**Reason(s) for Redactions:**  Upon further consideration, ICE no longer claims the b(5) exemption as to this information and release the information previously withheld. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |
| 2023-ICLI-00003, | Partial | **Document Title**: Email titled "8103 DHS oppose TWOP for SA review 8.28.20.docx" | Freedom of Information |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 1075 | | **Document Description**: Blank document with just the header of an email. <br><br>**Redacted Information**: Names of ICE Employees <br><br>**Reason(s) for Redactions**: FOIA Exemption (b)(6) and (b)(7)(C): disclosure of the names of ICE employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; could place them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and disclosure could minimize the ability to effectively conduct future investigations. ICE has been designated as a Security/Sensitive Agency under the U.S. Office of Personnel Management's official Data Release Policy, recognizing that ICE employees are subject to heightened risk of harassment or attack by virtue of their employment with ICE. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | Act 5 U.S.C. § 552 (b)(5) |
| 2023-ICLI-00003, 1088 | Partial | **Document Title**: Redacted Document, part of a larger email titled "Draft Arguments USC Claim tomorrow," beginning on page 1087 <br><br>**Document Description**: Continuation of an email exchange between ICE employees from page 1087 discussing arguments for a US citizen claim on the following day. <br><br>**Redacted Information**: This document between ICE attorneys, discussing case strategies, was inadvertently redacted as (b)(6) and (b)(7)(C) but is a continuation of the (b)(5) redaction from the preceding page. As such, ICE no longer claims the (b)(6) and (b)(7)(C) exemptions as to this | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

*Stevens v. DHS et al. - Vaughn Index (April 2024)*

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | information other than the PII within the document, but instead claims exemption (b)(5) to withhold deliberative information and attorney work-product.<br><br>**Reason(s) for Redactions**:  The information is properly withheld as deliberative material per (b)(5), which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. These materials do not reflect final agency actions or policy; instead, they are a reflection of the issues the author has determined to be, in their judgement, worthy of discussion or consideration by colleagues or superiors and their release would only serve to confuse the public.<br><br>Specifically, the document is part of a larger email chain, where an ICE ACC is providing colleagues and superiors notes on oral arguments to be made in immigration court on the following day, for purposes of seeking comments and recommendations.  The email details arguments the author is to address at an imminent immigration court hearing pertaining to, among other things, opposition to a motion to terminate and claims regarding alienage. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications thereby adversely impacting the quality of internal policy decisions and, consequently, the development of ICE agency positions.<br><br>The information withheld is also protected as attorney work product created in preparation for litigation. The attorney work-product privilege serves to protect the adversarial process by insulating the attorney's preparation from scrutiny and protects facts from disclosure. Here, the information redacted consists of claims that the respondent has made regarding his birth records and how the agency will rebut these claims, as well as evidence the agency has in support of their | |

Case: 25-1126      Document: 9      Filed: 03/10/2025      Pages: 94

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | argument. The disclosure of the information in this email, seeking guidance for the implementation and litigation of this category of immigration cases, would chill the free and frank exchange of ideas that form the backbone of effective decision-making when it comes to selecting the most effective strategy to pursue in litigating immigration cases on behalf of ICE. To effectively litigate immigration cases in furtherance of ICE's mission, attorneys must be able to discuss merits or demerits of legal arguments and legal strategy with total candor. Disclosure of this information would significantly harm the integrity of the attorneys' preparation process and their ability to effectively represent ICE's interests during immigration hearings. Further, the identifiable and foreseeable harm that would be caused by disclosure of these records would inhibit the candid discussion of issues between employees, which would hinder the ability of ICE attorneys to be fully informed concerning the agency's ability and to make quality decisions about such issues as well as assess any future litigation risks. | |
| 2023-ICLI-00003, 1093-1096 | Partial | **Document Title**: Emails Titled "FW: Acquisition & Derivation question Pascal Charpentier A[redacted]," and "RE: Acquisition & Derivation question Pascal Charpentier A[redacted].," <br><br> **Document Description**: An email communication between ICE attorneys and a USCIS officer discussing how certain facts should be applied to immigration law and litigation strategy. <br><br> **Redacted Information:** Partial redactions pursuant to FOIA Exemption (b)(5) were made to withhold deliberative information and attorney work-product. <br><br> **Reason(s) for Redactions:** The information is properly withheld as deliberative material per (b)(5), which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C), (b)(5) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | included within inter-agency or intra-agency memoranda or letters. These materials do not reflect final agency actions or policy; instead, they are a reflection of the issues the author has determined to be, in their judgement, worthy of discussion or consideration by colleagues or superiors and their release would only serve to confuse the public. Specifically, within the email chain on the top of page 1093, an ICE attorney is seeking opinions from a superior based on an assessment from a USCIS officer, beginning on the center of page 1093. The assessment is discussing  United States Citizenship derivation status that the subject is claiming, specifically the citizenship status of the subject's mother.  The email contains an assessment of the case, an opinion, the basis of the opinion, and what would need to be shown in order to claim derivation status. This communication is an attempt to finalize a position, based on questions presented to the USCIS officer on page 1094.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications thereby adversely impacting the quality of internal policy decisions and, consequently, the development of ICE agency positions.

The information contained is also protected as attorney work product created in preparation for litigation. The attorney work-product privilege serves to protect the adversarial process by insulating the attorney's preparation from scrutiny and protects facts from disclosure. Here, the information redacted consists of a guidance requested from an ICE attorney to a USCIS officer, on whether the subject can claim derivation status for U.S. Citizenship.  The USCIS officer presents an assessment for the ICE attorneys in order to be able to get a better understanding of the derivation claim and to formulate and finalize positions on the topic.  The disclosure of the information in this email, specifically providing detailed information on the subject and the subject's mother,  in order to seek guidance on how to proceed with the drafting of an opposition | |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | brief, would chill the free and frank exchange of ideas that form the backbone of effective decision-making when it comes to selecting the most effective strategy to pursue in litigating immigration cases on behalf of ICE. To effectively litigate immigration cases in furtherance of ICE's mission, attorneys must be able to discuss merits or demerits of legal arguments and legal strategy with total candor. Disclosure of this information would significantly harm the integrity of the attorneys' preparation process and their ability to effectively represent ICE's interests during immigration hearings. Further, the identifiable and foreseeable harm that would be caused by disclosure of these records would inhibit the candid discussion of issues between employees, which would hinder the ability of ICE attorneys to be fully informed concerning the agency's ability and to make quality decisions about such issues as well as assess any future litigation risks. | |
| 2023-ICLI-00003, 1116-1118 | Partial | **Document Title**: Emails Titled "FW: Charpentier - #A[redacted] – USC Claim – OPLA NYC" and "Charpentier - #A[redacted] – USC Claim – OPLA NYC"<br><br>**Document Description**: An email communication between an ICE attorney with the Office of the Principal Legal Advisor (OPLA) and an ICE officer with ERO Domestic Operations, where the attorney is advising the client about the attorney's recommendation on whether the respondent has established a claim for US citizenship. The email is labeled "Sensitive/Privileged," "Pre-Decisional & Deliberative," "Attorney Work Product," and "Attorney Client Privilege Communication"<br><br>**Redacted Information:** Partial redactions pursuant to FOIA Exemption (b)(5) were made to withhold deliberative information and attorney-client privileged information.<br><br>**Reason(s) for Redactions:** The information is properly withheld as deliberative material per (b)(5), which protects the integrity of the deliberative or decision-making processes within the | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6) and (b)(7)(C) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. These materials do not reflect final agency actions or policy; instead, they are a reflection of the issues the author has determined to be, in their judgement, worthy of discussion or consideration by colleagues or superiors and their release would only serve to confuse the public. Specifically, within the email chain, the ICE attorney is advising the ERO Domestic Operations officer on the claims the subject has made regarding why he has made a probative claim for US citizenship. The ICE attorney discusses in detail the legal reasons as to why the agency does not believe that a probative claim for US citizenship has been made. The attorney provides recommendation that the claimant remain in custody. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications thereby adversely impacting the quality of internal policy decisions and, consequently, the development of ICE agency positions.<br><br>The information redacted on these pages also constitutes attorney-client privileged information because the office of ERO Domestic Operations is represented by OPLA and the attorney is providing his thoughts and opinion on the subject's ongoing detention and continuation of the removal proceedings. The attorney is inquiring whether the officer agrees in his capacity as a client. Furthermore, the ICE attorney in this email exchange is also providing his legal opinion and advice in his capacity as counsel for the agency, regarding the strength of the argument presented, and likewise is seeking input from the client as to whether or not they agree with the attorney's position. The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. | |

Stevens v. DHS et al. - *Vaughn* Index (April 2024)

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | The attorney-client privilege applies in this instance because the redacted portions constitute and/or reflect opinions and analysis of an ICE attorney to an officer regarding concurrence of the legal strategy to adopt when responding to the memorandum referenced on page 1117. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor.  If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel. | |
| 2023-ICLI-00003, 1151-1159 | Partial | **Document Title**: Emails between ICE attorneys titled "FW: USC Claim A[redacted] upcoming hearing on Aug 18, 2020, IJ Reid," and "RE: USC Claim A[redacted] upcoming hearing on Aug 18, 2020 IJ Reid"<br><br>**Document Description**: An email correspondence between ICE attorneys, where the attorneys familiar with the case are relaying the procedural history, substantive facts, and ICE's legal position to an attorney in anticipation of their first appearance on the case.<br><br>**Redacted Information:**   Partial redactions pursuant to FOIA Exemption (b)(5) were made to withhold attorney work-product.<br><br>**Reason(s) for Redactions:**  The case analysis is protected as attorney work product created in preparation for litigation. The attorney work-product privilege serves to protect the adversarial process by insulating the attorney's preparation from scrutiny, as well as to protect facts from disclosure. Here, the information redacted consists of an attorney's analysis of the case, the relief sought based on derivation status and, and the attorney's opinions on the likelihood of the detainee obtaining relief.  This is a detailed assessment and based on the author's compilation of numerous | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | ways in which an individual can derive United States' Citizenship, and the arguments posed for each category of derivation, with the author's conclusion and recommendation on the matter The email discusses how the claimant is attempting to make a claim for US citizenship through his mother and maternal grandfather. The email further addresses the citizenship of the mother and the maternal grandfather and a detailed analysis of whether US citizenship can be established under the INA based on the facts. The disclosure of the information in this draft guidance deliberating the appropriate course of action would chill the free and frank exchange of ideas that form the backbone of effective decision-making when it comes to selecting the most effective strategy to pursue in litigating national security type immigration cases on behalf of ICE. To effectively litigate immigration cases in furtherance of ICE's mission, attorneys must be able to discuss merits or demerits of legal arguments and legal strategy with total candor. Disclosure of this information would significantly harm the integrity of the attorneys' preparation process and their ability to effectively represent ICE's interests during immigration hearings. Further, the identifiable and foreseeable harm that would be caused by disclosure of these records would inhibit the candid discussion of issues between employees, which would hinder the ability of ICE attorneys to be fully informed concerning the agency's ability and to make quality decisions about such issues as well as assess any future litigation risks. This is a draft and not a final document. Draft documents, by their nature, are pre-decisional and preliminary versions of what may later become a final document in whole or in part. Oftentimes draft documents never evolve into a final form; material is withdrawn or discarded during the decision-making process. It is also possible that the process by which a draft evolves into a final document, in and of itself, can be considered deliberative. Release of the draft material would serve to profoundly chill the decision-making process across ICE because it would discourage the expression of candid opinions and inhibit the free and frank | |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | exchange of information and ideas between agency personnel and ensure personnel would be less inclined to produce and circulate materials for the consideration and comment of their peers. The information is properly withheld as deliberative material per (b)(5), which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. These materials do not reflect final agency actions or policy; instead, they are a reflection of the issues the author has determined to be, in their judgement, worthy of discussion or consideration by colleagues or superiors and their release would only serve to confuse the public. Specifically, within the email chain, the information redacted consists of an attorney's analysis of the case, the relief sought based on derivation status and, and the attorney's opinions on the likelihood of the detainee obtaining relief.  This is a detailed assessment and based on the author's compilation of numerous ways in which an individual can derive United States' Citizenship, and the arguments posed for each category of derivation,  with the author's conclusion and recommendation on the matter The email discusses how the claimant is attempting to make a claim for US citizenship through his mother and maternal grandfather. The email further addresses the citizenship of the mother and the maternal grandfather and a detailed analysis of whether US citizenship can be established under the INA based on the facts. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications thereby adversely impacting the quality of internal policy decisions and, consequently, the development of ICE agency positions. | |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 2023-ICLI-00003, 1280-1283 | Partial | **Document Title**: Email Titled "FW: Charpentier - #A[redacted] – USC Claim – OPLA NYC, "FW: Passport Application Use Authorization," and "RE: Passport Application Use Authorization" <br><br> **Document Description**: Emails between ICE attorneys discussing the case and opinions involving Mr. Charpentier's matter on page 1280. Further redactions were made to withhold attorney work-product on pages 1281 to 1283. <br><br> **Redacted Information:** Partial redactions pursuant to FOIA Exemption (b)(5) were made to withhold deliberative information and attorney work-product. <br><br> **Reason(s) for Redactions:** The information is properly withheld as deliberative material per (b)(5), which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. These materials do not reflect final agency actions or policy; instead, they are a reflection of the issues the author has determined to be, in their judgement, worthy of discussion or consideration by colleagues or superiors and their release would only serve to confuse the public. Specifically, on the top of page 1280, the information redacted consists of an attorney's summary of the case and opinions on whether the subject's claim of United States Citizenship is proven based on the assessment on the subsequent pages of analysis, beginning on page 1281. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications thereby adversely impacting the quality of internal policy decisions and, consequently, the development of ICE agency positions. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

Stevens v. DHS et al. - *Vaughn* Index (April 2024)

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | The case analysis is also protected as attorney work product created in preparation for litigation. The attorney work-product privilege serves to protect the adversarial process by insulating the attorney's preparation from scrutiny, as well as to protect facts from disclosure. Here, the information redacted on page 1281-1283 consist of an attorney's analysis of the case, relief sought based on derivation status and, and their opinions on whether the subject's claim of United States Citizenship is accurate, based on their own derivation analysis. The disclosure of the information in this draft guidance deliberating the appropriate course of action would chill the free and frank exchange of ideas that form the backbone of effective decision-making when it comes to selecting the most effective strategy to pursue in litigating immigration cases on behalf of ICE. To effectively litigate immigration cases in furtherance of ICE's mission, attorneys must be able to discuss merits or demerits of legal arguments and legal strategy with total candor. Disclosure of this information would significantly harm the integrity of the attorneys' preparation process and their ability to effectively represent ICE's interests during immigration hearings. Further, the identifiable and foreseeable harm that would be caused by disclosure of these records would inhibit the candid discussion of issues between employees, which would hinder the ability of ICE attorneys to be fully informed concerning the agency's ability to and to make quality decisions about such issues as well as assess any future litigation risks. | |
| 2023-ICLI-00003, 1610-1619 | Partial | **Document Title**: November 4, 2020, Memorandum for the Director of Field Operations, OPLA and the Assistant Director for Field Operations, ERO<br><br>**Document Description**: A memorandum authored by an ICE attorney summarizing the facts of a particular matter, which will be used by ICE leadership to render a decision. The document is labeled "Sensitive/Privileged," "Pre-Decisional," and "Attorney Work Product." | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **Redacted Information:** Partial redactions pursuant to FOIA Exemption (b)(5) were made to withhold deliberative information and attorney work-product.<br><br>**Reason(s) for Redactions:** The information is properly withheld as deliberative material per (b)(5), which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. These materials do not reflect final agency actions or policy; instead, they are a reflection of the issues the author has determined to be, in their judgement, worthy of discussion or consideration by colleagues or superiors and their release would only serve to confuse the public. Specifically, the memo in question contains pre-decisional attorney work product, with opinions, as to Mr. Charpentier's claim to United States Citizenship. Here, the information redacted consists of an attorney's analysis of the case, the relief sought based on derivation status and, and the attorney's opinions on the likelihood of the detainee obtaining relief. This is a detailed assessment and based on the author's compilation of numerous ways in which an individual can derive United States' Citizenship, and the arguments posed for each category of derivation, with the author's conclusion and recommendation on the matter. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications thereby adversely impacting the quality of internal policy decisions and, consequently, the development of ICE agency positions.<br><br>The memorandum is also protected as attorney work product created in preparation for litigation. The attorney work-product privilege serves to protect the adversarial process by insulating the attorney's preparation from scrutiny, as well as to protect facts from disclosure. Here, the information redacted consists of an attorney's analysis of the case, the relief sought based on | |

Stevens v. DHS et al. - *Vaughn* Index (April 2024)

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | derivation status and, and the attorney's opinions on the likelihood of the detainee obtaining relief. This is a detailed assessment and based on the author's compilation of numerous ways in which an individual can derive United States' Citizenship, and the arguments posed for each category of derivation, with the author's conclusion and recommendation on the matter. The disclosure of the information in this memorandum deliberating the appropriate course of action based on the accompanying legal analysis would chill the free and frank exchange of ideas that form the backbone of effective decision-making when it comes to selecting the most effective strategy to pursue in litigating national security type immigration cases on behalf of ICE. To effectively litigate immigration cases in furtherance of ICE's mission, attorneys must be able to discuss merits or demerits of legal arguments and legal strategy with total candor. Disclosure of this information would significantly harm the integrity of the attorneys' preparation process and their ability to effectively represent ICE's interests during immigration hearings. Further, the identifiable and foreseeable harm that would be caused by disclosure of these records would inhibit the candid discussion of issues between employees, which would hinder the ability of ICE attorneys to be fully informed concerning the agency's ability and to make quality decisions about such issues as well as assess any future litigation risks. | |

JACQUELINE STEVENS                              )
                                               )
           *Plaintiffs*,                       )
                                               )
v.                                             )      Case No. 22 C 5072
                                               )
UNITED STATES DEPARTMENT OF                    )      Judge Kennelly
HEALTH AND HUMAN SERVICES, *et al.,*           )
                                               )
                                               )
                                               )
           *Defendants*.                       )
                                               )
_____       )

### **SUPPLEMENTAL DECLARATION OF FERNANDO PINEIRO**

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.  I am the FOIA Director of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office. I have held this position since August 14, 2022, and I am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C § 552 (the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access statutes and regulations. Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013, to August 13, 2022, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS"). The ICE FOIA office mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

2.  As the FOIA Director my official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office regarding the processing of FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. In connection with my official duties and responsibilities, I am familiar with ICE's procedures for responding to requests for information pursuant to the FOIA and the Privacy Act.

3.  I submit this supplemental declaration in support of ICE's motion for summary judgment in the above-captioned case and for providing an additional sixty (60) pages pursuant to the

agreement between Plaintiff and ICE. The statements contained in this declaration are based on my personal knowledge, my review of the documents maintained by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

4.   This declaration supplements and incorporates by reference sections I through III of my previous Declaration dated April 30, 2024, styled "Declaration of Fernando Pineiro."

5.   In addition, in accordance with the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this supplemental declaration explains the basis for withholding portions of the additional 60 pages of records mentioned above pursuant to FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). **ICE's Supplemental *Vaughn* Index is attached hereto as Attachment A**.

## I.      ORGANIZATION OF THE *VAUGHN* INDEX

6.   Pursuant to the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), a supplemental *Vaughn* Index accompanies this supplemental declaration; the *Vaughn* Index provides a description of each redaction and the corresponding FOIA exemption being applied.

7.   The *Vaughn* index is in a table format. The first column contains the bates number prefix for the records produced. The second column contains the bates stamp suffix (page numbers) of the responsive records. The third column describes the category of withholdings taken on the documents (full or partial). The fourth column describes the redaction codes, which are citations to the sections of the FOIA Exemptions. The fifth column describes the underlying records and provides justifications for the asserted exemptions.

8.   As stated in my April 30, 2024, Declaration, ICE made nine (9) productions, totaling 2,802 pages.  This supplemental *Vaughn* index encompasses a sixty (60) page sample of those responsive records produced by the program offices. The records contained in this sixty (60) page sample were subject to partial and full withholdings pursuant to FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

9.   A complete description of these documents, and the bases for the withholdings of information in them, is detailed in ICE's Supplemental *Vaughn* index. Generally, they include

email communications between ICE employees regarding immigration hearings, court filings, discussion of litigation strategy, and third-party information.

## II. DESCRIPTION OF FOIA WITHHOLDINGS APPLIED TO RECORDS PROVIDED TO PLAINTIFFS

### FOIA Exemption 5 U.S.C. § 552(b)(5)

10. 5 U.S.C. § 552(b)(5) ("Exemption 5") of the FOIA allows the withholding of inter-agency or intra-agency records that are normally privileged in the civil discovery context. Pursuant to Exemption 5, the three invoked privileges are the deliberative process privilege, the attorney-client privilege, and the attorney-work product privilege.  ICE applied Exemption 5 to protect from disclosure information subject to all three of these privileges, as applicable.

11. ICE withheld pre-decisional, deliberative internal discussions, deliberations, and recommendations between and amongst ICE attorneys and their clients regarding how to address certain litigation issues and strategy in preparation for litigation.  The final responses were released to the Plaintiff, but the internal, pre-decisional and deliberative discussions prior to finalizing any responses were withheld.

12. The contents of these discussions and deliberations are pre-decisional in nature because they were prepared by employees within ICE to assist ICE immigration attorneys in making a final decision on how to respond to motions, the court, or other third-party inquiries.

13. The deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda, letters, or emails. Many of the documents withheld contain questions within the documents that are directed to ICE attorneys. The internal discussions on the issue include various avenues the attorneys could explore in resolving the case, and the best routes in responding to opposing counsel in this matter.

14. The deliberations that are exhibited on the records are between and amongst ICE attorneys. These attorneys must be able to discuss proposed agency action freely. Release of the draft material would serve to profoundly chill the decision-making process across ICE because it would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel, and also ensure personnel would be less inclined

to produce and circulate materials for the consideration and comment of their peers. Additionally, since these documents contain proposals for agency action, release of these documents may create confusion regarding what positions have actually been adopted by the agency. Should internal deliberations between ICE employees and officials be released to the public, this could cause a great likelihood of harassment and annoyance by members of the public. This could hinder ICE employees from conducting their official duties and could disrupt their private lives; could place them in danger as targets of law enforcement investigations and could minimize the ability to effectively conduct future investigations.

15. ICE also withheld portions of the documents as attorney-work product privileged information. These documents were drafted by the New York Office of the Principle Legal Advisor Chief Counsel ("OPLA OCC") to prepare for the litigation of a specific immigration case, including oral arguments at relevant hearings.

16. Lastly, documents were withheld that advise attorneys on how to prepare for immigration court hearings, what arguments to present to immigration court, what type of evidence to look for, and which lines of questioning to pursue. Disclosure of this information would significantly harm the integrity of the attorneys' preparation process and their ability to effectively represent ICE's interests during hearings.

17. In each case, Plaintiffs have been provided with the final response and as such, obtaining the deliberative materials is unnecessary.

**FOIA Exemption 5 U.S.C. § 552(b)(7) Threshold**

18. 5 U.S.C. § 552(b)(7) ("Exemption 7") establishes a threshold requirement that, to withhold information on the basis of any of its subparts, the records or information must be compiled for law enforcement purposes. In this case, the relevant records consist of a law enforcement code from ICE's law enforcement database, which is related to ICE's mission to enforce the immigration laws of the United States.

19. The information for which the ICE FOIA Office asserted Exemption 7 satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act, codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. See 8 U.S.C. § 1103. ICE is the largest investigative arm of DHS and is responsible

for identifying and eliminating vulnerabilities within the nation's borders. ICE is tasked with preventing any activities that threaten national security and public safety by investigating the people, money, and materials that support illegal enterprises. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now has more than 20,000 employees and offices in all 50 states and 48 foreign countries, and is responsible for enforcing the nation's immigration laws, and identifying and eliminating vulnerabilities within the nation's borders.

20. The records and information at issue in this matter pertain to ICE's obligation to enforce the immigration laws of the United States by investigating non-U.S. individuals who may be present in the United States illegally, as law enforcement codes, such as event numbers, are relied upon by ICE officers when discharging ICE's mission.   The records and information located in response to Plaintiffs' FOIA requests were collected and compiled by ICE law enforcement officers advancing ICE's law enforcement missions. Therefore, the records and information located in response to the FOIA requests were compiled for law enforcement purposes and meet the threshold requirement of Exemption 7.

## FOIA Exemptions 5 U.S.C. § 552(b)(6) & (7)(C)

21. 5 U.S.C. § 552(b)(6) ("Exemption 6") 6 allows the withholding of information found in "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Records that apply to or describe a particular individual, including investigative records, qualify as "personnel," "medical" or "similar files" under Exemption 6. When applying this exemption to responsive documentation, the agency must balance the individual's personal privacy interest against the public need for the information.

22. 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)") similarly protects from disclosure records or information "compiled for law enforcement purposes" if a release of the records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

23. When asserting Exemptions 6 and 7(C), ICE balances an individual's personal privacy interest against the public's interest in the disclosure of the information.

24. Here, ICE applied Exemption 6 in conjunction with Exemption 7(C) to protect from disclosure the names, contact information, including email addresses, photographs, office

numbers, initials, social security numbers, signatures, and other personally identifiable information ("PII") of third-party individuals and ICE employees.

25. Such information, if disclosed to the public or to a third-party requester without the permission of the individual, could cause harm to the individual, expose the individual to identity theft and may reasonably lead to unwanted contact from persons that might seek to harm the individual.

26. Additionally, ICE employees have received an increase in threats, intimidation, and personal attacks in recent years due to the nature of their work. Publicly disclosing employees' PII could subject ICE employees to harassment or harm. Additionally, the release of the email addresses, which are not publicized, could expose employees to an increase of cyber threats.

27. As to that information specific to ICE employees, the privacy consideration at issue is the interest of each of these individuals in remaining free from harassment, intimidation, doxing and annoyance in conducting their official duties in the future, their interest in remaining free from harassment, intimidation, doxing and annoyance in their private lives, and their interest in not being targeted by individuals in the future who may begrudge them. In recognition of the above-described strong privacy interest of all ICE employees, on June 11, 2020, the Office of Personnel Management ("OPM") approved ICE's request to be designated as a "security/sensitive" agency for FOIA purposes, which ensures that OPM would, henceforth, withhold all personally identifying information pertaining to ICE employees.

28. Furthermore, third party individuals have a recognized privacy interest in not being publicly associated with law enforcement investigations through the release of records compiled for law enforcement purposes. The identities of persons named in law enforcement files (whether or not the named individual is the target of investigations or law enforcement actions) are properly withheld under Exemptions 6 and 7(C) in recognition of the stigmatizing connotation carried by the mere mention of individuals in law enforcement files. The individuals' privacy interest in the information contained in the record outweighs any minimal public interest in the disclosure of the information. Plaintiffs have not articulated a sufficient public interest or public need to justify release of this information. The disclosure of this PII serves no public benefit and would not assist the public in understanding how ICE is carrying out its statutory responsibilities. Additionally, the third parties identified in the records have not consented to the disclosure of their PII.

29. ICE determined that the disclosure of the information described above would constitute a clearly unwarranted invasion of personal privacy and thus Exemption 6 applied. In addition, ICE determined that disclosure of this information, which was compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy, and thus Exemption 7(C) applied.

30. Having determined that the individuals identified in the responsive records have a cognizable privacy interest in not having their information released, ICE FOIA then balanced the interest in safeguarding the individuals' privacy from unnecessary public scrutiny against the public's interest in understanding how ICE performs its statutory duties. Exemptions 6 and 7(C) were applied to prevent disclosure of third-party individuals' identities and PII as well as the identities of ICE personnel. In each instance where Exemptions 6 and 7(C) were applied, the redaction was limited to the name of the individual and all other personally identifiable information, which if released, would not shed any further light as to the operations or activities of ICE. In some redactions, the information surrounding the redactions was released and the limited extent of the redaction is readily apparent from the context of the records.

31. Based upon the traditional recognition of strong privacy interests in law enforcement records, the categorical withholding of third-party information identified in law enforcement records is appropriate. Moreover, the third parties identified in these records have not provided consent to the release of their personally identifiable information.

**FOIA Exemptions 5 U.S.C. § 552(b)(7)(E)**

32. 5 U.S.C. § 552(b)(7)(E) ("Exemption 7(E)") affords protection to law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

33. For purposes of this supplemental *Vaughn* index, ICE has applied Exemption 7(E) to law enforcement sensitive information, specifically a law enforcement code contained in a record titled "Notice To Appear."

34. This type of information is utilized for law enforcement purposes as it is in furtherance of ICE's obligation to enforce the immigration laws of the United States by conducting removal

operations and ensuring that these operations are not hindered by actions of bad actors who may obtain access to confidential law enforcement sensitive information and intelligence.

35. Disclosure of law enforcement event code could assist unauthorized parties in deciphering the meaning of the codes, aid in gaining improper access to law enforcement databases, and assist in the unauthorized party's navigation of the law enforcement databases. Disclosure of these techniques and practices for navigating the databases could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken during law enforcement investigations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities and would sacrifice the safety of both ICE employees and the public at large.

36. The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory duties.

### III. SEGREGABILITY

37. 5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

38. A line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

39. With respect to the records that were released, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released. ICE did not withhold any non-exempt information on the grounds that it was non-segregable.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.

Signed this _____ day of July 2024.

FERNANDO
PINEIRO JR

Digitally signed by
FERNANDO PINEIRO JR
Date: 2024.07.29
11:02:29 -04'00'

Fernando Pineiro, FOIA Director
Freedom of Information Act Office
U.S. Department of Homeland Security

U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009

**Stevens v. DHS et al.**
No. 22-cv-05072 (N.D.Ill., filed 11.10.22)

U.S. Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 2023-ICLI-00003, 14 | Partial | **Document Title**: "MEMO TO FILE," Page 3 of 6<br><br>**Document Description**: Page 3 of Memo to File, outlining Toan Manh Hoang's Claim to United States Citizenship<br><br>**Redacted Information:**   Partial redactions under Exemptions (b)(6) and (b)(7)(C) were made to redact the third-party Personal Identifiable Information (PII) including the name and year of birth of the claimant's mother on the first paragraph, and her name on the third paragraph.  The second paragraph contains the claimant's father's name, date of birth, and year of naturalization. The claimant's father's year of naturalization is also redacted on the fourth paragraph.<br><br>**Reason(s) for Redactions:**   The disclosure of third-party PII in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |
| 2023-ICLI-00003, 34 | Partial | **Document Title**: "Abstract of the Civil Judgment"<br><br>**Document Description**: A translation of a preliminary judgment for the dissolution of a marriage from the Socialist Republic of Vietnam, dated August 20, 1980.<br><br>**Redacted Information:**  Partial redactions under Exemptions (b)(6) and (b)(7)(C) were made to redact third-party identifiable information in the center of the top of the page, including the name and date of birth of a third party after "One Party," their address two lines underneath after "residing at." Also redacted is the name and date of birth of a third party after "The other party," and their address two lines underneath after "residing at." Halfway down on the center of the page after "As to the formality," redactions were applied to the name of a third party.  In the section labeled "As to the | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

Stevens v. DHS et al. – *Supplemental Vaughn* Index (July 2024)

2

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | content," redactions were made to the parties in the specific dissolution of the marriage, and the name of the party who paid the fee was redacted after "Court cost of 20$ to be paid by." <br><br> Partial redactions under Exemptions (b)(6) and (b)(7)(C) were made to redact third-party identifiable information on the bottom of the page to court personnel and on the bottom left of the page to the court interpreter's name. <br><br> **Reason(s) for Redactions:** The disclosure of third-party PII in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. <br><br> **Please note, ICE no longer asserts (b)(6) and (b)(7)(C)** to the judge's name on the lower portion of page 34. | |
| 2023-ICLI-00003, 89-93 | Partial/Full | **Document Title:** "Coalition of Organizations Lead Online rally for Pascal Shakoure Charpentier, a U.S. Citizen who had been held in ICE detection Since July" on page 89, An email titled "FW: Translation request status French Birth Cert," and a thread of emails titled "RE: Translation request status," on page 91. Page 92 is a cover letter for U.S. Citizenship and Immigration Services Language Services Section," followed by a translated third-party birth certificate on page 93. <br><br> **Document Description:** A news article dated November 18, 2020, on page 89. This is followed by emails on page 91, beginning on the bottom of the page moving up in chronological order, from USCIS Language Services to an ICE Attorney with a translated birth certificate. That ICE attorney then forwarded the translated document to other ICE attorneys, including a supervisor, with a question posed. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

Stevens v. DHS et al. – *Supplemental Vaughn* Index (July 2024)

3

| Bates Stamp Page # | Withholding: Full/Partial | Case: 25-1126    Document: 9    Filed: 03/10/2025    Pages: 94<br>Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **Redacted Information**:  Partial redactions pursuant to FOIA Exemption (b)(5) were made to withhold deliberative information and attorney work-product on the top center of page 91.<br><br>**Reason(s) for Redactions:**   The information is properly withheld as deliberative material per (b)(5), which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. These materials do not reflect final agency actions or policy; instead, they are a reflection of the issues the author has determined to be, in their judgement, worthy of discussion or consideration by colleagues or superiors and their release would only serve to confuse the public. Specifically, within the email chain, the ICE attorney is conferring with colleagues and a supervisor as to what impact the new document, the birth acknowledgement, would have on the subject's United States Citizenship derivation analysis. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications thereby adversely impacting the quality of internal policy decisions and, consequently, the development of ICE agency positions.<br><br>The email exchange is also protected as attorney work product created in preparation for litigation. The attorney work-product privilege serves to protect the adversarial process by insulating the attorney's preparation from scrutiny and protects facts from disclosure. The purpose of this email between ICE attorneys is an attempt to formulate a strategy. In this email, an ACC is discussing the newly obtained birth acknowledgment's impact on how it affects the litigation strategy in anticipation of imminent litigation. To effectively litigate immigration cases in furtherance of ICE's mission, attorneys and supervisors have to be able to discuss merits or demerits of legal arguments with total candor. Disclosure of this information would significantly harm the integrity of the attorneys' preparation process and their ability to effectively represent ICE's interests during immigration hearings. Further, the identifiable and foreseeable harm that would be caused by disclosure of these records would inhibit the candid discussion of issues between employees, which would hinder the ability of ICE attorneys to be fully informed concerning the agency's liability and to make quality decisions about such issues as well as assess any future litigation risks.<br><br>**Redacted Information:**   Partial redactions under Exemptions (b)(6) and (b)(7)(C) were made to redact the names of the Assistant Chief Counsels (ACC) involved on the email on top of the page, the | |

| Bates Stamp Page # | Withholding: Full/Partial | Case: 25-1126    Document: 9    Filed: 03/10/2025    Pages: 94<br>Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | salutation, and the signature portion. On the email located on the center of the page, titled "RE: Translation request status," redactions were made to names and emails of an ICE attorney and names, emails and the phone number of the USCIS Language Services Section representative.  Partial redactions under Exemptions (b)(6) and (b)(7)(C) were also made on the top of page 92 to the room number of USCIS' Language Services Section, and to the USCIS translator's name and digital signature the center and bottom of page 92.<br><br>A full redaction under Exemptions (b)(6) and (b)(7)(C) were made to redact a translated third-party birth acknowledgment from the Republic of Haiti, on page 93.<br><br>**Please note, ICE no longer asserts (b)(6) and (b)(7)(C)** to the "attachments" portion on the top of page 91 and center of page 92, or the subject's alien number in the center of page 91 and 92.<br><br>**Reason(s) for Redactions per (b)(6) and (b)(7)(C):**    The disclosure of the names and email addresses of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII.  ICE has been designated as a Security/Sensitive Agency under the U.S. Office of Personnel Management's official Data Release Policy, recognizing that ICE employees are subject to heightened risk of harassment or attack by virtue of their employment with ICE. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the  names, email addresses and phone numbers of USCIS representatives and the birth acknowledgement  belong to individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, | |

| Bates Stamp Page # | Withholding: Full/Partial | Case: 25-1126    Document: 9    Filed: 03/10/2025    Pages: 94<br>Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2023-ICLI-00003, 94-101 | Partial | **Document Title:** Email titled "Translation request status," "RE: A file is in RAILS," "FW: A File is in RAILS," "RE: General Information," "General Information"<br><br>**Document Description:** This is an email exchange between an ICE attorney and a USCIS Language Service Specialist, regarding the status of a request to translate a document. There is also an email exchange between a USCIS representative and ICE attorneys, seeking information to confirm citizenship status of a third party related to the subject, which was forwarded to other ICE attorneys.<br><br>**Redacted Information:** Partial redactions under Exemptions (b)(6) and (b)(7)(C) were made to redact the name, email addresses, phone numbers, and room numbers of ICE attorneys, and names, email addresses, and phone numbers of USCIS representatives. Additionally, the PII of a third party, specifically a copy of a naturalization card on the lower portion of page 97 and in the body of the email in the center of page 98 contains a third part's name, date of birth, and both parents' names, which were also redacted pursuant to Exemptions (b)(6) and (b)(7)(C).<br><br>**Reason(s) for Redactions:** The disclosure of the names and email addresses of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. ICE has been designated as a Security/Sensitive Agency under the U.S. Office of Personnel Management's official Data Release Policy, recognizing that ICE employees are subject to heightened risk of harassment or attack by virtue of their employment with ICE. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of third-party PII, including the names, email addresses and phone numbers of USCIS representatives, the third-party birth naturalization information, and the third-party individual's name, date of birth, and both of their parents' names, in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Please note, ICE no longer asserts (b)(6) and (b)(7)(C)** to the subject's alien number on page 94 and 100. | |
| 2023-ICLI-00003, 450-460 | Full | **Document Title:** Pages withheld entirely<br><br>**Document Description:** Third party petition for naturalization, affidavit of witness, application to file petition for naturalization, background check, and application for permit to reenter the United States<br><br>**Redacted Information:**   Exemptions (b)(6) and (b)(7)(C) were made to redact third party PII located in the petition for naturalization and accompanying package, including names, alien numbers, addresses, date of birth, place of birth, witness information, and a photograph of the third party.<br><br>**Reason(s) for Redactions:**    The disclosure of third-party PII, including the names, alien numbers, addresses, date of birth, place of birth, witness information, and a photograph in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

| Bates Stamp Page # | Withholding: Full/Partial | Case: 25-1126 Document: 9 Filed: 03/10/2025 Pages: 94<br>Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2023-ICLI-00003, 645-646 | Partial | **Document Title:** Email titled "RE: Pascal Charpentier next hearing detained reset to Feb. 9, 2021"<br><br>**Document Description:** Email thread between an ICE attorney and ERO Detention Officer<br><br>**Redacted Information:** Partial redactions under Exemptions (b)(6) and (b)(7)(C) were made to redact the name, email addresses, and phone numbers of ICE attorneys, and names, email addresses, and phone numbers of an ERO Officer.<br><br>**Reason(s) for Redactions:**   The disclosure of the name and email address of the ICE attorney and the name, email address, and phone number of the ERO officer in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII.  ICE has been designated as a Security/Sensitive Agency under the U.S. Office of Personnel Management's official Data Release Policy, recognizing that ICE employees are subject to heightened risk of harassment or attack by virtue of their employment with ICE. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |
| 2023-ICLI-00003, | Partial | **Document Title:** "Case 1:20-cv-07510 Document 1 Filed 09/14/20 Page 1 of 10" | Freedom of Information Act 5 U.S.C. |

| Bates Stamp Page # | Withholding: Full/Partial | Case: 25-1126    Document: 9    Filed: 03/10/2025    Pages: 94<br>Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 991 | | **Document Description:** First page of a complaint for injunctive and declaratory relief, filed in the United States District Court for the Southern District of New York<br><br>**Redacted Information:**  Partial redactions under Exemptions (b)(6) and (b)(7)(C) were made to redact the names, email addresses, and phone numbers of third parties.<br><br>**Reason(s) for Redactions:**   The disclosure of third-party PII, including the third-party individual's names, email addresses, and phone numbers, in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | § 552 (b)(6), (b)(7)(C) |
| 2023-ICLI-00003, 1030-1035 | Partial | **Document Title: "**FOR OFFICIAL USE ONLY"<br><br>**Document Description:** Third party report of transfer or discharge from the armed forces of the United States<br><br>**Redacted Information:**   Exemptions (b)(6) and (b)(7)(C) were made to redact third party PII located in the report of transfer or discharge from the armed forces of the United States and accompanying package, including names, social security numbers, ranking, date of rank, date of birth, selective service number, blood type, address, signatures, and a copy of the front and back of a third party's permanent resident card.<br><br>**Reason(s) for Redactions:**   The disclosure of third-party PII, including the third-party individual's name, social security numbers, ranking, date of rank, date of birth, selective service number, blood type, address, third party authorizing officer, signatures, and a copy of the front and back of a third party's permanent resident card, in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2023-ICLI-00003, 1316-1327 | Partial | **Document Title:** U.S. Department of Justice, Immigration and Naturalization Service, Fingerprint Notification<br><br>**Document Description:**  Third party Fingerprint notification, Certificate of Naturalization, Notice of Naturalization Oath Ceremony, Application for Naturalization, Notice of Naturalization Interview, copy of the back of the permanent resident card, and Certificate Preparation and Oath Declaration<br><br>**Redacted Information:**  Exemptions (b)(6) and (b)(7)(C) were made to redact third party PII located in the Fingerprint notification, Certificate of Naturalization, Notice of Naturalization Oath Ceremony, Application for Naturalization, Notice of Naturalization Interview, copy of the back of the permanent resident card, and Certificate Preparation and Oath Declaration, including names, alien numbers, date and place of birth, signatures, social security numbers, addresses, and a copy of the back of a third party's permanent resident card.<br><br>**Reason(s) for Redactions:**    The disclosure of third-party PII, including the third-party individual's name, alien numbers, date and place of birth, signatures, social security numbers, addresses, and a copy of the back of a third party's permanent resident card, in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

| Bates Stamp Page # | Withholding: Full/Partial | Case: 25-1126   Document: 9   Filed: 03/10/2025   Pages: 94<br>Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2023-ICLI-00003, 2193-2203 | Partial | **Document Title:** First Count<br><br>**Document Description:** A portion of a DHS Submission of Master Evidence which begins on page 2176, including an indictment from August 1990, with a criminal history attached, followed by a certification of service on page 2203<br><br>**Redacted Information:** Exemptions (b)(6) and (b)(7)(C) were made to redact third party PII located throughout pages, including names, license plate number, and phone numbers, and the name of an ICE attorney.<br><br>**Reason(s) for Redactions:**   The disclosure of the name of the ICE attorneys in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII.  ICE has been designated as a Security/Sensitive Agency under the U.S. Office of Personnel Management's official Data Release Policy, recognizing that ICE employees are subject to heightened risk of harassment or attack by virtue of their employment with ICE. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of third-party PII, including their license plate number, names and phone numbers, in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2023-ICLI-00003, 2204-2206 | Partial | **Document Title:** Email titled "FW: verify if Pascal Charpentier [Alien Number Redacted] subject to mandatory detention under 236(C)," an email titled "verify if Pascal Charpentier [Alien Number Redacted] subject to mandatory detention under 236(C)," a Notice to EOIR: Alien Address, and DHS Notice to Appear<br><br>**Document Description:** An email between ICE Employees regarding a pending immigration case, an EOIR notice and DHS Notice to Appear on the same matter.<br><br>**Redacted Information:**  Partial redactions pursuant to FOIA Exemption (b)(5) were made to withhold deliberative information and attorney work product on the center of page 2204.<br><br>**Reason(s) for Redactions:**   The information is properly withheld as deliberative material per (b)(5), which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. These materials do not reflect final agency actions or policy; instead, they are a reflection of the issues the author has determined to be, in their judgement, worthy of discussion or consideration by colleagues and superiors and their release would only serve to confuse the public. Specifically, within the email chain, the ICE attorney is conferring with a colleague, and forwarded to a supervisor, to verify whether the individual is subject to mandatory detention and provides an opinion as to the issue. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications thereby adversely impacting the quality of internal policy decisions and, consequently, the development of ICE agency positions.<br><br>The email exchange is also protected as attorney work product created in preparation for litigation. The attorney work-product privilege serves to protect the adversarial process by insulating the attorney's preparation from scrutiny and protects facts from disclosure. The purpose of this email | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) |

Stevens v. DHS et al. – *Supplemental Vaughn* Index (July 2024)

| Bates Stamp Page # | Withholding: Full/Partial | Case: 25-1126    Document: 9    Filed: 03/10/2025    Pages: 94<br>Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | between ICE attorneys is an attempt to formulate a strategy. In this email, an ACC is discussing the litigation strategy in anticipation of imminent litigation, specifically seeking to verify whether the individual is subject to mandatory detention, based on interpretation of the law and the reasoning of the legal argument identified in the email. To effectively litigate immigration cases in furtherance of ICE's mission, attorneys and supervisors have to be able to discuss merits or demerits of legal arguments with total candor. Disclosure of this information would significantly harm the integrity of the attorneys' preparation process and their ability to effectively represent ICE's interests during immigration hearings. Further, the identifiable and foreseeable harm that would be caused by disclosure of these records would inhibit the candid discussion of issues between employees, which would hinder the ability of ICE attorneys to be fully informed concerning the agency's liability and to make quality decisions about such issues as well as assess any future litigation risks.<br><br>**Redacted Information:** Partial redactions under Exemptions (b)(6) and (b)(7)(C) were made to redact the names, email addresses, and office room numbers of ICE attorneys, and names of detention officers.<br><br>**Reason(s) for Redactions:** FOIA Exemption (b)(6) and (b)(7)(C): The disclosure of the name and email address of the ICE attorney and the names of the detention officers in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. ICE has been designated as a Security/Sensitive Agency under the U.S. Office of Personnel Management's official Data Release Policy, recognizing that ICE employees are subject to heightened risk of harassment or attack by virtue of their employment with ICE. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |

Stevens v. DHS et al. – *Supplemental Vaughn* Index (July 2024)

13

| Bates Stamp Page # | Withholding: Full/Partial | Case: 25-1126     Document: 9     Filed: 03/10/2025     Pages: 94 Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **Redacted Information:**  Partial redactions under Exemption (b)(7)(E) were made to redact an event code on the top right of page 2206.<br><br>**Reason(s) for Redactions:**  Exemption 7(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Disclosure of internal codes such as Event numbers could assist unauthorized parties in deciphering the meaning of the codes, aid in gaining improper access to law enforcement databases, and assist in the unauthorized party's navigation of the law enforcement databases.  Disclosure of these techniques and practices for navigating the databases could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ERO during removal operations.  In addition, the disclosure of law enforcement sensitive techniques, procedures, systems, undercover agent activities, staffing/resource allocation, or investigatory steps taken during a criminal investigation, could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.  Further, how immigration officers conduct investigations, work with undercover agents, or allocate resources, are all law enforcement techniques and procedures that are not commonly known.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |

Stevens v. DHS et al. – *Supplemental Vaughn* Index (July 2024)

14

| 1  | IN THE UNITED STATES DISTRICT COURT |
| 2  | NORTHERN DISTRICT OF ILLINOIS<br>EASTERN DIVISION |

1          IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF ILLINOIS
2                  EASTERN DIVISION

3

4    JACQUELINE STEVENS,                    )   Docket No. 22 C 5072
                                            )
5                     Plaintiff,            )
                                            )
6           vs.                             )
                                            )
7    UNITED STATES DEPARTMENT HEALTH AND    )   Chicago, Illinois
     HUMAN SERVICES,                        )   January 29, 2025
8                                           )   9:30 a.m.
                      Defendant.            )
9

10                TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE MATTHEW F. KENNELLY
11

12   APPEARANCES:

13

14   For the Plaintiff:    LAW OFFICES OF LARRY R. GLAZER
                           BY:  MS. NICOLETTE GLAZER
15                         2121 Avenue of the Stars #800
                           Century City, CA 90067
16                         (310) 407-5353

17

18   For the Defendant:    UNITED STATES ATTORNEY'S OFFICE
                           (NDIL - Chicago)
19                         BY:  MR. ALEX HARMS HARTZLER
                           219 South Dearborn Street
20                         Chicago, IL 60604
                           (312) 886-1390

21

22

23

24   Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                           Official Court Reporter
25                         219 S. Dearborn Street, Suite 2102
                           Chicago, Illinois  60604
                           (312) 435-5639

1    (The following proceedings were had by video:)

2        THE CLERK:  Case 22 C 5072, Stevens v. United States

3    Health and Human Services.

4        THE COURT:  Good morning.  This is Judge Kennelly.

5    We're doing this by video.  Can plaintiff's counsel please

6    give your name for the record.

7        MS. GLAZER:  Good morning, your Honor.  Nicolette

8    Glazer on behalf of Jacqueline Stevens, plaintiff.

9        THE COURT:  Thanks.

10       Counsel for the defendants.

11       MR. HARTZLER:  Good morning, your Honor.  Alex

12   Hartzler for the government.

13       THE COURT:  Okay.  So I just want to make sure I'm

14   clear on one thing, and that's exactly -- hang on a second.  I

15   just got to get the docket back up here.

16       So am I right, Mr. Hartzler, that -- it's a motion to

17   partially stay, and the part that you're asking to stay is the

18   part that would have required -- that would require production

19   by whatever it was tomorrow or the next day of certain

20   documents by ICE; is that right?

21       MR. HARTZLER:  That's exactly right.

22       THE COURT:  Okay.  So I've looked at both the motion

23   and the response that was filed my Ms. Glazer.  The last thing

24   I read was Ms. Glazer's response.  So, Mr. Hartzler, what else

25   would you like to tell me?

1    MR. HARTZLER:  I guess it would depend on what your
2  Honor is interested in hearing.
3    THE COURT:  I don't have any specific questions.  The
4  question would be if there's something in Ms. Glazer's
5  response that you wanted to address that you didn't think --
6    MR. HARTZLER:  My only comment is generalities in
7  terms of Ms. Stevens' desire to get records, I don't think
8  those quite outweigh the impossibility of unringing the bell
9  that would happen if ICE is not allowed to, you know, evaluate
10  the appeal.
11    THE COURT:  Ms. Glazer, what else, if anything, would
12  you like to tell me?
13    MS. GLAZER:  Your Honor, I put in my motion I believe
14  the standard is very stringent.  And one other thing that I
15  didn't put in my response is that if the argument is accepted
16  that any time that there is an injunctive form of relief
17  provided, it would basically make a FOIA request in a position
18  of never winning because anytime the government is made to
19  produce something, then there is an automatic 60-day appeal,
20  and then another year and a half and whatnot and that would
21  defeat the FOIA.  The Supreme Court has never said that there
22  is a stay outright and nothing in FOIA's text has suggested
23  that there is such an envisioning by Congress.
24    THE COURT:  So that's a really great segue to
25  something that I actually did think about asking which I'm now

1  going to to ask.

2        So my sense of this is that the category of documents

3  that we're talking about here that were subject to this more

4  or less immediate production order is a known set of

5  documents.  How big of a set of documents is it?

6        MR. HARTZLER:  I believe it's something like 2800

7  pages of documents that were produced.

8        THE COURT:  Okay.  So let me ask a question of Mr. --

9  a couple questions of Mr. Hartzler.  And I don't care what the

10  answers are.  I just want to know.

11        Is the issue on appeal likely to be -- I get that

12  it's the solicitor general that makes the final determination

13  of all of this stuff.  I get that.  I'm not trying to bind the

14  government.  You're the litigating lawyer, so you have a

15  better handle on the case than anybody on the defense side.

16  Is the issue likely to be a contention that it was

17  inappropriate, even given the rulings, to order production

18  that quickly, or is the contention going to be more, I guess,

19  underlying merits related?

20        Here's the reason -- let me tell you why I'm asking

21  the question.  The reason I'm asking the question is if the

22  major bone of contention for appeal is, hey, you know,

23  Kennelly shouldn't have told us to turn all this stuff over

24  right now, then I could potentially solve that problem.  We

25  could come up with a different schedule.  Okay?  So that's a

1   solvable problem and it might cut off an appeal entirely, and

2   it would effectively render moot Ms. Glazer's issue or concern

3   regarding, you know, basically if the stay is given, that

4   means essentially the FOIA plan never wins.  If it's something

5   that I can't fix that way, that's a different story.  So

6   that's why I'm asking the question.

7           MR. HARTZLER:  So the speed with which the Court

8   ordered the production has created complications with respect

9   to the timing of the appeal that your Honor has become

10  familiar with.

11          THE COURT:  Understood.

12          MR. HARTZLER:  I think, though, that even if the

13  Court had ordered full production with no redactions of the

14  entire universe let's just say three months from now which

15  would, of course, give ample time, I think there would still

16  be a potential issue for appeal on the question of whether the

17  Court has discretion under FOIA to order lifting of redactions

18  or lifting of the holdings essentially as a sanction for a

19  smaller number of, let's just say for the sake of it, improper

20  withholdings that the Court identifies.  And in the normal

21  course, if we had more time, that's what we would be

22  evaluating.  I obviously can't speak to whether --

23          THE COURT:  Understood.  All right.  So I mean, this

24  isn't a negotiation, but what the heck.  Let's just kind of

25  talk this through.  You know, I will say as lawyers say, the

1   fact that I haven't reacted to what you said to me doesn't

2   mean I agree with you.  I actually don't think it was a

3   sanction.  I think it was basically what I would contend was a

4   failure to establish a viable index.  That's a bit of a

5   shorthand, but that's a side issue.

6          So I would -- I thought about this more, you know,

7   since I got these motions.  And of course, we had two rounds

8   of this motion.  The protective notice of appeal has now been

9   filed, and I would be -- I get that Ms. Glazer probably

10  doesn't like this, but actually, Ms. Glazer hadn't

11  specifically asked me for immediate production I think.  So I

12  would be willing to say that that deadline, whatever it was,

13  January 31st or whatever, is extended to April the 30th.  And

14  that would take -- that would take the -- that's the three

15  months.  That would take the timing issue off the table.  That

16  would leave the assessment of the viability of an appeal from

17  the solicitor's end basically down to what I'll call more of a

18  merits question as opposed to a timing question, and I

19  would -- that's something that I thought about before coming

20  in here today.  I'd be willing to modify the order to that

21  extent.  So, Ms. Glazer, how about that?

22          MS. GLAZER:  May I ask your Honor a question?  If the

23  Court modifies and extended, would the Court still be granting

24  a stay pending appeal?

25          THE COURT:  So what I would be -- what I would be

1  doing is I would say there's no immediate harm at this point
2  given that they've got three months.  Now, they could come
3  back to me -- they could come back to me closer to the time
4  and say, okay, now we've decided to pursue the appeal and now
5  we want a stay, but it would actually be potentially a
6  different calculation at that point than it is now.  Right now
7  you've got these two issues on the table, merits and timing.
8  Timing would essentially have been taken off the table, so it
9  would potentially be a different calculation.

10        MS. GLAZER:  Well, I will say it makes sense.  I will
11  not oppose the continuance until April, and then that will
12  allow the solicitor general to make a decision.  And then as
13  the Court said, it would be purely a merits issue, and they
14  bear the burden of proof on FOIA, they fail it, and then you
15  lose a motion for summary judgment; there's either a judgment
16  or trial.

17        THE COURT:  And I'm not meaning by this to confine,
18  you know, what issues the solicitor or the government decides
19  to raise on appeal.  That's what I'm going to do.

20        Let me just pull up the order so that I can dictate
21  something to my courtroom deputy clerk here that actually is
22  coherent.

23        So the order of January the 16th, which is docket
24  No. 21 -- 121, the final paragraph of the order, second
25  sentence, is modified to state, the Court denies ICE's motion

1   for summary judgment in full and orders ICE to produce all

2   responsive records without redactions to Stevens by April --

3   let me make sure it's a weekday -- April the 30th of 2025.

4          The motion to stay pending appeal, which is docket

5   number 131, is denied without prejudice to refiling given the

6   modification of the order.  And I may hear from you guys again

7   in a couple of months, but that kind of takes the heat off

8   everybody for now.

9          So anything else anybody wants to say before we sign

10  off?

11         MS. GLAZER:  Nothing from plaintiff, your Honor.

12  Thank you.

13         MR. HARTZLER:  Nothing.  Thanks, Judge.

14         THE COURT:  Take care.  Have a good day.

15    (Which were all the proceedings had in the above-entitled

16  cause on the day and date aforesaid.)

17    I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.
18
    /s/ *Carolyn R. Cox, RPR, F/CRR*         February 27, 2025
19  Official Court Reporter
    United States District Court
20  Northern District of Illinois
    Eastern Division
21

22

23

24

25

## CERTIFICATE OF COMPLIANCE

The appendix and short appendix include the materials required by

Circuit Rule 30(a) and (b).

*s/ Simon C. Brewer*
Simon C. Brewer

# CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2025, I electronically filed the foregoing appendix with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.


*s/ Simon C. Brewer*
Simon C. Brewer